## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BETHESDA SOFTWORKS LLC<br>1370 Piccard Drive, Suite 120<br>Rockville, Maryland  20850<br><br>       Plaintiff,<br><br>v.<br><br>INTERPLAY ENTERTAINMENT CORP.<br>100 North Crescent Drive, Suite 324<br>Beverly Hills, California  90210<br><br>**SERVE ON**:<br>Registered Agent<br>Corporation Service Company<br>2711 Centerville Road Suite 400<br>Wilmington, Delaware  19808<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. _____ |

### COMPLAINT FOR DECLARATORY JUDGMENT,
### PRELIMINARY INJUNCTION AND OTHER RELIEF

Plaintiff Bethesda Softworks LLC ("Bethesda"), by and through its undersigned attorneys, brings this action against Defendant Interplay Entertainment Corp. ("Interplay") for declaratory, injunctive and other relief.  In support of its Complaint, Bethesda alleges as follows:

### NATURE OF THIS ACTION

1.  Bethesda files this action to obtain a declaration that any and all of Interplay's limited rights to use Bethesda's federally registered trademark FALLOUT (the "FALLOUT Mark") have been

permanently forfeited and terminated, and to enjoin Interplay from continuing to infringe on Bethesda's exclusive rights in the FALLOUT Mark, which is a mark for goods relating to computer video games.

2.   There are two agreements at issue in this case.   Through the first agreement between the parties entitled Asset Purchase Agreement dated April 4, 2007 ("APA"), Bethesda acquired all rights related to the FALLOUT Mark from Interplay.   Under the APA, Interplay was granted certain limited merchandising rights, subject to Bethesda's advance approval, to use the FALLOUT Mark with respect to the manufacture, sale and distribution of several video games that it had developed before Bethesda acquired the exclusive rights to the FALLOUT Mark ("Pre-existing Fallout Games").   A true and accurate copy of the APA is attached hereto as Exhibit A.

3.   The second agreement is a license-back agreement that was an exhibit to the APA, entitled Trademark License Agreement also dated April 4, 2007 ("TLA").   Under the terms of the TLA, Bethesda allowed Interplay a limited-purpose license to use the FALLOUT Mark for the development of a Massively Multiplayer Online Game (MMOG), subject to certain financial and developmental pre-conditions.   A true and correct copy of the TLA is attached hereto as Exhibit B.

4.   The TLA was automatically terminated on April 4, 2009 due to Interplay's failure to meet the financial and developmental pre-conditions that were required for Interplay to continue using the FALLOUT Mark for the MMOG.

5.   After its highly successful, worldwide release of "Fallout 3" for the PC, Xbox® 360 and PlayStation® 3, Bethesda became aware that Defendant Interplay has been manufacturing, selling and distributing a video game package under the name "Fallout Trilogy," the use of which Bethesda never authorized, and which is confusingly similar to "Fallout 3."   Despite Bethesda's repeated notices to Interplay that Interplay was in material breach of its obligations under the APA, Interplay failed to cease

and desist, and did not respond to Bethesda in any way.  Therefore, Bethesda terminated Interplay's limited use merchandising rights under the APA on June 30, 2009.

6.   More recently, Bethesda has discovered that Interplay is also manufacturing, selling and distributing video game packages under the names "Fallout Collection" and "Saga Fallout," the use of which Bethesda never authorized, and which is confusingly similar to "Fallout 3." There is actual confusion in the market place regarding the origin of the game packages in that the Amazon.com listing for "Fallout Collection" erroneously states that the video game package is manufactured by Bethesda. *See* http://www.amazon.com/Fallout-Collection-Tactics-Post-Nuclear-PC/dp/B000IGE78M/ref=sr_1_2 ?ie=UTF8&s=software&qid=1252002481&sr=8-2.

7.   Through Interplay's Form 10-Q, filed with the U.S. Securities and Exchange Commission ("SEC") on August 18, 2009, Bethesda has learned that Interplay entered into licensing agreements with other third parties, under which those parties were licensed "to exploit games that [Interplay] ha[s] intellectual property rights to."  A true and correct copy of Interplay's Form 10-Q is attached hereto as Exhibit C.  Interplay never sought, and Bethesda never gave, its approval to any licensing agreements with third parties regarding the Pre-Existing Fallout Games.

8.   Although Interplay no longer has any rights to use the FALLOUT Mark under either the APA or the TLA, it continues to use the FALLOUT Mark in blatant disregard of Bethesda's exclusive rights in the Mark and in breach of both of the agreements.  Any use of the FALLOUT Mark by Interplay constitutes willful infringement, resulting in immediate, substantial and irreparable harm to Bethesda.  Therefore, through this action, Bethesda seeks to enjoin Interplay's ongoing unlawful acts.

## PARTIES

9.   Plaintiff Bethesda is a limited liability company incorporated under the laws of Delaware, with its principal place of business at 1370 Piccard Drive, Suite 120, Rockville, Maryland 20850. Bethesda is a successful developer and publisher of award-winning video games for PCs and various console platforms, including Sony's PlayStation® 2 and PlayStation® 3, Microsoft's Xbox® and Xbox® 360, and the Nintendo DS and Wii.  It is the exclusive owner of federal registrations for the FALLOUT Mark, including an incontestable U.S. registration, and a number of international trademark registrations therefor (the "FALLOUT Mark").

10. Upon information and belief, Defendant Interplay is a corporation organized under the laws of Delaware, with its principal place of business at 100 North Crescent Drive, Suite 324, Beverly Hills, California 90210.  Upon information and belief, Interplay is a developer, publisher and licensor of video game software.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over this Complaint and this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. §§ 1116 and 1121.  This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367(a), over Bethesda's claims for common law trademark infringement, unfair competition and breach of contract under the laws of the State of Delaware, because Bethesda's federal and state claims are based on the same operative facts and judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdiction of such state law claims.

12. This Court has personal jurisdiction over Defendant Interplay in that Defendant transacts and solicits business in this District regularly and purposefully and has had systematic and continuous

contacts with this District for more than five years.  Upon information and belief, Interplay sells its products in interstate commerce.

13. Furthermore, pursuant to both agreements, Interplay expressly agreed that "sole and exclusive jurisdiction and venue for any action or litigation arising from or relating to" the agreements shall be an appropriate court located in the State of Maryland.  *See* Ex. A (APA), § 7.2; Ex. B (TLA), § 13.0.  Therefore, jurisdiction and venue are proper in this Court.

14. Both the APA and the TLA are governed by and construed in accordance with the substantive laws of the State of Delaware, per agreement between the parties.  *See* Ex. A (APA), § 7.2; Ex. B (TLA), § 13.0.

## FACTS COMMON TO ALL CLAIMS

### Background Concerning the Relationship between Bethesda and Interplay

15. This is a lawsuit arising out of Interplay's continuing and unauthorized use of Bethesda's federally registered trademarks for FALLOUT.  Bethesda is the owner of longstanding rights in the FALLOUT Mark for video games and related goods ("Bethesda's Goods").  A true and correct copy of U.S. Registration No. 2,181,084, which has been deemed incontestable by the United States Patent and Trademark Office, and U.S. Registration No. 3,583,756 are attached hereto as Exhibit D.

16. Interplay owned the FALLOUT Mark at the time the Mark was originally issued on August 8, 1998.  During the time it owned the FALLOUT Mark, Interplay developed, manufactured, sold and distributed interactive entertainment software games entitled "Fallout," "Fallout 2," and "Fallout Tactics: Brotherhood of Steel" (the "Pre-existing Fallout Games").

17. On June 29, 2004, Bethesda and Interplay entered into a licensing agreement whereby Bethesda acquired "exclusive, worldwide, perpetual unrestricted intellectual property rights in and to all

future uses of every kind to the brand and interactive entertainment software property known as 'Fallout' and to the 'Fallout' trademark," in exchange for license royalties. *See* Ex. A (APA), Recital A.

18. On April 4, 2007, Bethesda and Interplay entered into the APA, under which Bethesda purchased outright from Interplay all rights, title and interest in the FALLOUT Mark for U.S. $5,750,000. *See id.* § 2.7. As a result, Bethesda became the owner of the FALLOUT Mark and related intellectual property. A true and correct copy of the Notice Recordation of Assignment from the United State Patent and Trademark Office, recording the assignment of the entire interest and the goodwill relating to the FALLOUT Mark from Interplay to Bethesda is attached hereto as Exhibit E.

**Terms of the Asset Purchase Agreement**

19. The APA gave Interplay the authority "to exclusively manufacture, have manufactured, sell and distribute" the Pre-existing Fallout Games, and Bethesda was to have "no financial interest in the sales of such Pre-existing Fallout Games." *See* Ex. A (APA), § 5.10 (hereinafter "Merchandising Rights"). However, the APA required Interplay to submit to Bethesda for written pre-approval "[a]ll packaging, advertising and promotional materials used by or on behalf of [Interplay] in connection with the Pre-existing Fallout Games." Bethesda required this pre-approval to avoid the situation it currently has where Interplay is marketing products using the FALLOUT Mark in a manner that confuses the public and violates Bethesda's exclusive rights. Indeed, the parties expressly agreed that "all packaging, advertising and promotional materials for the Pre-existing Fallout Games shall not use, refer to, trade upon, reflect the look and feel of or otherwise exploit any of the Fallout games or products, including but not limited to their packaging, advertising and promotional materials, developed by or for [Bethesda] or its licensees." *See id.*

20. The APA also provided that Interplay may not assign the APA, or any of its rights or obligations under the APA, without the prior written consent of Bethesda. *See* Ex. A (APA), § 7.5.

21. The APA expressly provided that injunctive relief was available to Bethesda for a breach of any of its terms because such a breach would "result in irreparable injury for which there is no adequate remedy at law." *See* Ex. A (APA), § 7.6.

### Terms of the Trademark License Agreement

22. As part of the APA, the parties also executed the TLA, which was Exhibit B-1 to the APA.

23. Under the TLA, Bethesda licensed back to Interplay a limited right to use the FALLOUT Mark only in connection with the development of a Massively Multiplayer Online Game for Fallout ("Fallout MMOG"), and for no other purpose. *See* Ex. B (TLA), § 2.1. An MMOG is a video game made available for online play that supports thousands of players playing the game simultaneously around the world over the Internet, and enables them to compete or cooperate on the game on a massive scale.

24. The license granted to Interplay by the TLA was an exclusive, non-transferable license, and it ***did not*** grant Interplay any right to sublicense without Bethesda's prior written approval. *Id.* § 2.1.

25. Again, Bethesda required that Interplay not develop any competing products that would cause customer confusion and infringe on Bethesda's rights. *See id.* § 5.5 (prohibiting Interplay from using any mark that is "confusingly similar" to the FALLOUT Mark).

26. Similarly, Bethesda required that Interplay not develop any other non-Fallout MMOGs that "use, incorporate, trade on or otherwise exploit any Fallout-related intellectual property created by Interplay or by Bethesda,"

> including without limitation any Fallout artwork, locations, graphic representations, story lines, creatures, monsters, names, likenesses,

> behaviors, environments (e.g., vaults), universes, settings, legends, characters, character classes, character professions, packaging, advertisements, text and translations, and any and all Fallout proprietary characters, trademarks, copyrights and artwork listed in Exhibit C-2 to the APA, it being understood and agreed by the parties that all such property is and shall remain exclusively owned by Bethesda.

*See id.* § 3.4.

27. For Interplay to retain the license rights under the TLA, it was required to fulfill two conditions. First, Interplay must begin the "full-scale development of its FALLOUT MMOG" within 24 months of the effective date of the TLA. Second, by such second anniversary date of the TLA, Interplay was required to have "secured financing for the FALLOUT MMOG in an amount no less than US$30,000,000.00." *Id.* § 2.3. In the event Interplay failed to fulfill either of these conditions, Interplay would "immediately lose and permanently forfeit its license rights under the [TLA] and the license rights automatically shall end, be void and otherwise terminate on the anniversary date of the second year after the Effective Date and [the TLA] shall no longer remain in effect." *Id.*

28. Again, the TLA expressly acknowledged "the irreparable harm that Bethesda will incur from any unauthorized use of the [FALLOUT Mark]" and that Bethesda "shall be entitled" to "preliminary and permanent injunctive relief" for any such unauthorized use. *Id.* § 9.3.5.

### The Distinctive and Famous FALLOUT Mark

29. Bethesda, including through its predecessor-in-interest, has duly and properly registered the FALLOUT Mark in the United States Patent and Trademark Office on the Principal Register. These registrations are valid, subsisting, and in full force and effect. *See* Ex. D. Bethesda's incontestable U.S. Registration No. 2,181,084 confers exclusive use of the FALLOUT Mark throughout the United States in connection with Bethesda's Goods.

30. Bethesda has used the FALLOUT Mark in interstate commerce continuously and has not abandoned its rights in the FALLOUT Mark.  Since at least 1997, Bethesda, through its predecessor-in-interest, has used the FALLOUT Mark extensively.

31. Bethesda has expended tens of millions of dollars developing, advertising and promoting "Fallout 3."  Since its launch in the United States in October 2008, "Fallout 3" has been a tremendous success, with worldwide sales of millions of units, and has garnered extensive media coverage and extraordinarily high consumer recognition.  "Fallout 3" has received numerous industry awards both before and after its release and was named the "Game of the Year" for 2008 by the Game Developers Choice Awards, among many others. *See* attached Exhibit F.   During 2009, Bethesda has released downloadable content packs for the PC and next generation consoles which expand the gameplay of "Fallout 3" and have been sold both digitally and as retailed boxed product.  Bethesda has also announced plans to release a Game of the Year Edition of "Fallout 3" for the PC and consoles later this year.

32. As a result of the inherent distinctiveness of the FALLOUT Mark and the efforts of Bethesda to finance, develop, advertise and promote "Fallout 3" over several years, Bethesda's customers and the public in general have come to know and recognize the FALLOUT Mark and to associate the mark with Bethesda.  Bethesda has thus built up extensive goodwill in connection with the offering of its goods under the FALLOUT Mark.  As such, the FALLOUT Mark is an asset of substantial value and importance to Bethesda.

**Interplay Fails to Meet Pre-conditions to Trademark License Agreement**

33. As the two-year anniversary of the TLA approached, Interplay sent a one-sentence letter to Bethesda on April 2, 2009, stating that "Interplay is in compliance with the requirements set forth in

Section 2.3 of the Trademark License Agreement ... with respect to development of the FALLOUT MMOG as defined in the [Trademark] License Agreement."

34. Bethesda responded in an April 7, 2009 letter that Interplay had failed to meet the pre-conditions under Section 2.3 of the TLA by April 4, 2009, and that Interplay's one-sentence letter did not demonstrate compliance with the pre-conditions. In pertinent part, Bethesda wrote: "Under these circumstances, all license rights under the [Trademark License Agreement] have been permanently forfeited and automatically ended, are void and otherwise terminated. ... Interplay shall immediately cease the use of the FALLOUT [M]ark and shall be responsible for correcting any impression you have created that Interplay has the right to develop this MMOG."

35. In that same letter, Bethesda warned Interplay that any proposed agreement that Interplay may enter into with a third party, Masthead Studios of Bulgaria, to fund and help develop the Fallout MMOG would be a violation of the anti-assignment provision of the TLA. *See* Ex. B (TLA), § 11.0.

36. Although Bethesda offered Interplay an opportunity to dispute the forfeiture of the license rights by providing documentation of compliance, Interplay never challenged the forfeiture or otherwise responded to the April 7, 2009 letter.

37. Interplay's Form 10-Q, filed with the SEC on August 18, 2009, states that Interplay has entered into a binding letter of intent with Masthead Studios for the funding and development of "Project: V13", which is a code-name for an MMOG other than the Fallout MMOG contemplated by the TLA. *See* Ex. C (10-Q), at 14.

38. Upon information and belief, the name "Project: V13" is a reference to "Vault 13," which is both the starting location and the initial working title of the original Fallout game. This indicates that

"Project: V13" is based on Fallout-related intellectual property elements in violation of Section 3.4 of the TLA.

39. Interplay's Form 10-Q further states that, as of June 30, 2009, Interplay had a working capital deficit of approximately $2,544,000, and cash assets of $16,000, *id.* at 14, indicating that Interplay in fact did not secure the required financing for the FALLOUT MMOG under the TLA.

### Interplay Continues Its Unauthorized Use of the FALLOUT Mark

40. In or about May 2009, Bethesda became aware that Interplay was distributing a compilation of the Pre-existing Fallout Games under the title "Fallout Trilogy" by means of a retail boxed product and by digital download from a link on Interplay's website, without Bethesda's approval.

41. Upon information and belief, Interplay began packaging, advertising and promoting the sale of "Fallout Trilogy" after Bethesda's launch of "Fallout 3."

42. Interplay has never submitted to Bethesda any packaging, advertising or promotional material for the sale and distribution of "Fallout Trilogy" for approval, as required by the Merchandising Rights provision of the APA. *See* Ex. A (APA), at § 5.10.

43. In recent months, Bethesda has become aware that Interplay entered into a licensing arrangement with a third party, Good Old Games, for the digital distribution of the Pre-existing Fallout Games through the website: http://www.gog.com/en/search/sort/search/fallout.   Upon information and belief, Interplay has entered into a similar licensing agreement with another third party, GameTap, for the digital distribution of the Pre-existing Fallout Games through GameTap's website: http://shop.gametap.com/products?q=fallout.   Upon information and belief, Interplay has recently entered into an agreement with yet another third party, Valve Corporation, for the digital distribution of

the Pre-existing Games, including a so-called "Fallout Collection," made available for purchase through Valve's website: http://store.steampowered.com/news/2741.

44. Interplay has never sought approval or permission from Bethesda to enter into any licensing arrangement with Good Old Games, GameTap or Valve Corporation for the sale and distribution of the Pre-existing Fallout Games, and Bethesda has never approved or given consent to Interplay, Good Old Games, GameTap or Valve.

45. By a letter dated June 16, 2009, Bethesda, through its counsel, informed Interplay that it objected to Interplay's activities with respect to the promotion, sale and distribution of "Fallout Trilogy" as well its unauthorized sublicensing activities with third parties.  Bethesda noted that Interplay was in material breach of its obligations under the Merchandising Rights provision of the APA.

46. In that same letter, Bethesda demanded that Interplay provide a complete accounting of all amounts invoiced, accrued and/or received by Interplay from all sales of the "Fallout Trilogy" as well as the digital sale and distribution of the Pre-existing Fallout Games.  Further, the letter notified Interplay that if Interplay failed to comply with Bethesda's demands within 14 calendar days from the date of the letter, any and all of Interplay's rights under the Merchandising Rights provision were to be terminated. *See id.*

47. Interplay never responded to Bethesda's June 16, 2009 letter and, therefore, all of Interplay's rights under the Merchandising Rights provision under the APA were terminated as of June 30, 2009.

48. In or about August 2009, Bethesda became aware that Interplay was distributing additional compilations of the Pre-existing Fallout Games under the titles "Fallout Collection" and "Saga Fallout" through third-party distributors in other countries.

49. Upon information and belief, Interplay began packaging, advertising and promoting the sale of "Fallout Collection" and "Saga Fallout" after Bethesda's launch of "Fallout 3."

50. Interplay has never submitted to Bethesda any packaging, advertising or promotional material for the sale and distribution of "Fallout Collection" and "Saga Fallout" for approval, as required by the Merchandising Rights provision of the APA. *See* Ex. A (APA), § 5.10.

51. Despite the termination of all of its Merchandising Rights, Interplay continues all of the infringing activities complained of herein.

### Interplay's Willful Infringement of the FALLOUT Mark

52. Interplay is well aware of Bethesda's exclusive rights in the FALLOUT Mark because it sold all of its rights in the Mark to Bethesda.

53. Interplay was aware also of the great popularity of "Fallout 3" with consumers before Interplay began its sales and distribution of the "Fallout Trilogy," "Fallout Collection," and "Saga Fallout."

54. Interplay's "Fallout Trilogy," "Fallout Collection," and "Saga Fallout" are in direct competition with Bethesda's Goods and cannibalizes on sales of "Fallout 3."

55. Indeed, Interplay's Form 10-Q, filed August 18, 2009, states that Interplay's PC net revenues for the three months ending June 30, 2009 were $225,000, up 476% compared to the same period of the previous year, "primarily due to an increase of back catalog sales," and video game console net revenues were $26,000, up 2,500% compared to the same period of the previous year, "due to the royalties earned from electronic distribution of back catalog titles." *See* Ex. C (10-Q) at 11.

56. Interplay's use of the names "Fallout Trilogy," "Fallout Collection," and "Saga Fallout" is confusingly similar to Bethesda's FALLOUT Mark in sound, appearance, meaning, and overall commercial impression.

57. Interplay's use of the names "Fallout Trilogy," "Fallout Collection," and "Saga Fallout" trades off the goodwill of Bethesda's FALLOUT Mark and is without permission or license from Bethesda.

58. Interplay advertises its "Fallout Trilogy," "Fallout Collection," and "Saga Fallout" products in commerce using names which are confusingly similar to Bethesda's FALLOUT Mark. Both parties utilize the same channels of trade.

59. Interplay's sale and distribution of "Fallout Trilogy," "Fallout Collection," and "Saga Fallout" indicates falsely to the relevant purchasing public that games sold in "Fallout Trilogy," "Fallout Collection," and "Saga Fallout" are affiliated, connected, or associated with Bethesda, or are sponsored, endorsed, or approved by Bethesda, or are related in some manner to Bethesda.

60. Indeed, there is evidence of actual confusion in the market place as to the origin of the game packages, because the Amazon.com listing for "Fallout Collection" erroneously states that the video game package is manufactured by Bethesda. *See* http://www.amazon.com/Fallout-Collection-Tactics-Post-Nuclear-PC/dp/B000IGE78M/ref=sr_1_2?ie=UTF8&s=software&qid=1252002481&sr=8-2.

61. Interplay's sale and distribution of "Fallout Trilogy," "Fallout Collection," and "Saga Fallout" deprives Bethesda of the ability to control the nature and quality of the products provided under the FALLOUT Mark, and places the reputation and goodwill of Bethesda, at least in part, in the hands of Interplay, who refuses to abide by the terms of the agreements between the parties.

62. Interplay's manufacture, sale and distribution of the Pre-existing Fallout Games following the termination of its Merchandising Rights under the APA constitute infringement of the FALLOUT Mark.

63. Interplay's use of the elements of the FALLOUT-related intellectual property in any scope and manner not authorized by the TLA, and its use of the FALLOUT-related intellectual property after the forfeiture of its license rights under the TLA, constitute infringement of the FALLOUT Mark.

64. On information and belief, Interplay's acts complained of herein have been malicious, deliberate, willful, intentional, and in bad faith, committed with full knowledge and conscious disregard of Bethesda's rights in the FALLOUT Mark and with an intent to trade on Bethesda's substantial goodwill in the FALLOUT Mark.

65. Bethesda has no adequate remedy at law and, if Interplay's activities are not enjoined, Bethesda will continue to suffer irreparable harm and injury to its business, goodwill and reputation.

**Interplay's Breaches of the APA and the Trademark License Agreement**

66. Interplay's acts complained of herein also constitute material breaches of both the APA and the TLA between the parties.

67. Interplay has breached the APA by, without limitation:

- Selling and distributing, without Bethesda's approval, the Pre-existing Fallout Games through digital download available for purchase through various third party websites;

- Selling and distributing the compilation of the Pre-existing Fallout Games as "Fallout Trilogy," both by retail boxed product and by digital download from a link on Interplay's website http://fallout.gamesplanet.com/games-fallout-trilogy2-interplay.html (the "Trilogy Webpage"), without Bethesda's approval;

- Selling and distributing the compilations "Fallout Collection" and "Saga Fallout" through third-party distributors in other countries without approval;

- Failing to submit to Bethesda any packaging, advertising and promotional materials for "Fallout Trilogy," "Fallout Collection," and "Saga Fallout," including the Trilogy Webpage, for pre-approval prior to any use; and

- Entering into licensing or distribution agreements with third parties, including, without limitation, GameTap, Good Old Games and Valve Corporation, to sell and distribute any of the Pre-existing Fallout Games, whether individually or in combination, or whether as retail boxed product or through digital download.

68. Interplay has also breached the TLA by, without limitation:

- Improperly using the elements of FALLOUT-related intellectual property in its development of an MMOG code-named "Project: V13"; and

- Improperly assigning its rights or delegating its duties under the TLA to third parties, including Masthead Studios, without the prior written consent of Bethesda, in connection with the development of the Fallout MMOG.

69. Bethesda has no adequate remedy at law and, if Interplay's activities are not enjoined, Bethesda will continue to suffer irreparable harm and injury to its business, goodwill and reputation.

## COUNT I

### DECLARATORY JUDGMENT
### (Contractual Rights and Obligations)

70. Bethesda incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

71. An actual controversy now exists as to the rights and obligations of the parties under the terms of the TLA and the APA.  Specifically, a dispute exists as to whether the TLA was terminated due to Interplay's failure to comply with contract terms, and whether Interplay's limited rights to use the FALLOUT Mark under the APA were terminated by Interplay's unlawful conduct of continuing to manufacture, sell and distribute games bearing the FALLOUT Mark without Bethesda's consent.

72. Antagonistic claims are present between the parties which will result in imminent and inevitable litigation, and the loss or injury sought to be avoided by this action cannot be vitiated by future proceedings. A judicial determination is necessary and appropriate at this time as continued uncertainty with respect to the parties' obligations will adversely affect the rights and interests of both parties.

73. Bethesda hereby seeks a declaration that the TLA was terminated and Interplay forfeited all of its license rights under that agreement on April 4, 2009.

74. Bethesda hereby seeks a declaration that Interplay no longer has any right to manufacture, sell or distribute the Pre-existing Fallout Games under Section 5.10 of the APA.

75. Finally, Bethesda also seeks a declaration that Interplay's continuing use of the FALLOUT Mark without authorization constitutes willful infringement.

## COUNT II

## PRELIMINARY INJUNCTION

76. Bethesda incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

77. Unless enjoined by this Court, Defendant Interplay will continue to manufacture, sell and distribute "Fallout Trilogy," "Fallout Collection," "Saga Fallout," and individual Pre-existing Fallout Games, and otherwise commit acts constituting willful violations of Bethesda's trademark rights and breaches of the APA and the TLA, without excuse or justification.

78. The benefits to Bethesda in obtaining a preliminary injunction are equal to or outweigh the potential harm, if any, which Defendant Interplay would incur if this Court were to issue a preliminary injunction.

79. Bethesda has suffered, and will continue to suffer, immediate, substantial and irreparable injury to its business, reputation and goodwill unless Interplay is enjoined from its unauthorized manufacture, sale and distribution of "Fallout Trilogy," "Fallout Collection," "Saga Fallout," and the Pre-existing Fallout Games. Without the preliminary injunction, the continuing unauthorized sales of those products will irreparably harm Bethesda by substantially decreasing the sales of Bethesda's "Fallout 3," and Interplay will be unjustly enriched through its unlawful actions.

80. There exists a strong likelihood that Bethesda will succeed on the merits of its claims.

81. Bethesda does not have an adequate remedy at law.

82. Interplay expressly agreed under both the APA and TLA that Bethesda would be entitled to injunctive relief upon a breach of either agreement. *See* Ex. A (APA) § 7.6; Ex. B (TLA) § 9.3.5.

**COUNT III**

**PERMANENT INJUNCTION**

83. Bethesda incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

84. Unless enjoined by this Court, Defendant Interplay will continue to manufacture, sell and distribute "Fallout Trilogy," "Fallout Collection," "Saga Fallout," and individual Pre-existing Fallout Games, and otherwise commit acts constituting willful violations of Bethesda's trademark rights and breaches of the APA and the TLA, without excuse or justification.

85. The benefits to Bethesda in obtaining a permanent injunction are equal to or outweigh the potential harm, if any, which Defendant Interplay would incur if this Court were to issue a permanent injunction.

86. Bethesda has suffered, and will continue to suffer, substantial and irreparable injury to its business, reputation and goodwill unless Interplay is enjoined from its unauthorized manufacture, sale and distribution of "Fallout Trilogy," "Fallout Collection," "Saga Fallout," and the Pre-existing Fallout Games. Without the permanent injunction, the continuing unauthorized sales of those products will irreparably harm Bethesda by substantially decreasing the sales of Bethesda's "Fallout 3," and Interplay will be unjustly enriched through its unlawful actions.

87. There exists a strong likelihood that Bethesda will succeed on the merits of its claims.

88. Bethesda does not have an adequate remedy at law.

89. Interplay expressly agreed under both the APA and TLA that Bethesda would be entitled to injunctive relief upon a breach of either agreement. *See* Ex. A (APA) § 7.6; Ex. B (TLA) § 9.3.5.

**COUNT IV**

**TRADEMARK INFRINGEMENT**
**(Section 32 of the Lanham Act (15 U.S.C. § 1114))**

90. Bethesda incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

91. Bethesda is the owner of U. S. Registration No. 2,181,084 for using the name "Fallout" in connection with "computer programs for video games and computer games and instruction manuals sold as a unit with the games," and U.S. Registration No. 3,583,756 for "pre-recorded DVD's featuring fantasy games."

92. Since at least 1997, Bethesda, through its predecessor-in-interest, has used the FALLOUT Mark in interstate commerce continuously and has not abandoned its rights in the FALLOUT Mark. As a result of the distinctiveness of the FALLOUT Mark and Bethesda's efforts to develop, advertise and promote products embodying the Mark, Bethesda has built up extensive goodwill in connection with the

offering of its goods under the FALLOUT Mark.  As such, the FALLOUT Mark is an asset of great value and importance to Bethesda.

93. Upon information and belief, without Bethesda's approval or consent, and having knowledge of Bethesda's exclusive rights in the FALLOUT Mark, Interplay is manufacturing, selling and distributing in interstate commerce "Fallout Trilogy," "Fallout Collection," and "Saga Fallout," which are confusingly similar to Bethesda's "Fallout 3" in which the FALLOUT Mark is embodied.

94. Upon information and belief, Interplay has chosen the names "Fallout Trilogy," "Fallout Collection," and "Saga Fallout" with the intent to trade upon, and otherwise exploit, the success of "Fallout 3," Bethesda's game software released to the general public in October 2008.

95. Interplay's use of "Fallout Trilogy," "Fallout Collection," and "Saga Fallout," without Bethesda's consent, is trademark infringement because it is outside the scope of limited use permitted by the APA.

96. In addition, any use by Interplay of the elements of the FALLOUT-related intellectual property after the termination of the TLA on April 4, 2009, constitutes further infringement of the FALLOUT Mark.

97. Furthermore, Interplay's manufacture, sale and distribution of any of the individual Pre-existing Fallout Games after June 30, 2009 is trademark infringement because Interplay's limited use rights to the FALLOUT Mark under the APA were terminated as of that date.

98. Interplay's manufacture, sale and distribution of any games bearing the FALLOUT Mark, including "Fallout Trilogy," "Fallout Collection," "Saga Fallout," and the individual Pre-existing Fallout Games, is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of those games, to the damage and detriment of Bethesda's reputation, goodwill and sales.

99. Interplay's acts constitute infringement of Bethesda's federally registered FALLOUT Mark, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

100.    Bethesda has suffered, is suffering and will continue to suffer irreparable harm and damage as a result of Defendant's wrongful conduct.  Defendant will, unless enjoined, continue to act in the unlawful manner complained of herein, all to the irreparable damage of Bethesda's business and reputation.  Bethesda's remedy at law is not adequate to compensate it for the injuries suffered and threatened.

101.    By reason of Defendant's wrongful acts, Bethesda has suffered substantial monetary damages which are continuing and to be determined at trial.

102.    Interplay has engaged in acts of infringement, with knowledge of Bethesda's exclusive rights to the FALLOUT Mark in connection with Bethesda's Goods, and Interplay continues in such acts of intentional infringement, thus entitling Bethesda to an award of treble damages, Interplay's profits, plus attorney's fees and costs in bringing and maintaining this action, pursuant to § 35(b) of the Lanham Act, 15 U.S.C. § 1117(b).

## COUNT V

### UNFAIR COMPETITION AND
### FALSE DESIGNATION OF ORIGIN
### (Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))

103.    Bethesda incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

104.    Interplay's actions, described above, violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Interplay's manufacture, sale and distribution in interstate commerce of the "Fallout Trilogy," "Fallout Collection," "Saga Fallout," and the Pre-existing Fallout Games bear the FALLOUT

Mark without authorization and are confusingly similar to Bethesda's "Fallout 3." Interplay's actions constitute unfair competition and false designation of origin.

105.     Bethesda has suffered, is suffering and will continue to suffer irreparable harm and damage as a result of Defendant's wrongful conduct.   Defendant will, unless enjoined, continue to act in the unlawful manner complained of herein, all to the irreparable damage of Bethesda's business and reputation.  Bethesda's remedy at law is not adequate to compensate it for the injuries suffered and threatened.

106.     By reason of Defendant's wrongful acts, Bethesda has suffered substantial monetary damages which are continuing and to be determined at trial.

107.     From the outset, Interplay has engaged in acts of unfair competition, false representation and designation, with knowledge of Bethesda's exclusive rights to the FALLOUT Mark in connection with Bethesda's Goods, and Interplay continues in such acts of unfair competition, intentional false representation and designation, thus entitling Bethesda to an award of treble its actual damages, Interplay's profits, plus attorneys' fees and costs in bringing and maintaining this action, pursuant to § 35(b) of the Lanham Act, 15 U.S.C. § 1117(b).

## COUNT VI

## ACCOUNTING

108.     Bethesda incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

109.     Bethesda is entitled, pursuant to 15 U.S.C. § 1117, to recover any and all profits of Interplay that are attributable to the acts of infringement.

110.    Bethesda is entitled, pursuant to 15 U.S.C. § 1117, to actual damages or statutory damages sustained by virtue of Interplay's acts of infringement.

111.    The amount of money due from Interplay to Bethesda is unknown to Bethesda and cannot be ascertained without a detailed accounting by Interplay of the precise revenues received under the Mark.

**COUNT VII**

**COMMON LAW TRADEMARK INFRINGEMENT**
**(Delaware Law)**

112.    Bethesda incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

113.    Bethesda owns and enjoys common law rights in and to the FALLOUT Mark in the State of Delaware and throughout the United States.

114.    On information and belief, Interplay's acts have been committed knowingly, in bad faith, and with the intent to cause confusion, mistake, and deception among consumers.

115.    Interplay's acts constitute infringement of Bethesda's common law rights in the FALLOUT Mark.

116.    Interplay's acts complained of herein were committed knowingly and in bad faith.

117.    As a direct and proximate result of Interplay's conduct, Bethesda has been and will continue to be substantially injured in its business, including harm to its goodwill and reputation, as well as loss of revenues and profits.

## COUNT VIII

### UNFAIR COMPETITION
#### (Delaware Deceptive Trade Practices-6 Del. C. 1953 § 2531 et seq.))

118.   Bethesda incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

119.   Interplay's manufacture, sale and distribution of "Fallout Trilogy," "Fallout Collection," "Saga Fallout," and individual Pre-existing Fallout Games is a false or misleading visual description or other representation which has the capacity, tendency, or effect of misleading or deceiving consumers. Through its actions, Interplay has caused likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of its goods and services, as well as to their affiliation, connection, or association with, or certification by Bethesda.

120.   Indeed, there is actual confusion in the marketplace regarding the origin of the game packages in that the Amazon.com listing for "Fallout Collection" erroneously states that the video game package is manufactured by Bethesda.  *See* http://www.amazon.com/Fallout-Collection-Tactics-Post-Nuclear-PC/dp/B000IGE78M.

121.   Interplay's manufacture, sale and distribution of "Fallout Trilogy," "Fallout Collection," "Saga Fallout," and individual Pre-existing Fallout Games therefore constitutes unfair competition and a deceptive trade practice in violation of 6 Del. C. 1953 § 2532.

122.   Interplay's acts complained of herein were committed knowingly and in bad faith.

123.   Bethesda has suffered, is suffering and will continue to suffer irreparable harm and damage as a result of Defendant's wrongful conduct.  Defendant will, unless enjoined, continue to act in the unlawful manner complained of herein, all to the irreparable damage of Bethesda's business and

reputation. Bethesda's remedy at law is not adequate to compensate it for the injuries suffered and threatened.

124.   By reason of Defendant's wrongful acts, Bethesda has suffered substantial monetary damages which are continuing and to be determined at trial.

**COUNT IX**

<u>**BREACH OF CONTRACT**</u>
**(Asset Purchase Agreement)**

125.   Bethesda incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

126.   Bethesda and Interplay entered into the Asset Purchase Agreement, a binding and enforceable contract for the purchase and sale, respectively, of the exclusive rights to the FALLOUT Mark.

127.   Interplay's continuing and unauthorized use of the FALLOUT Mark, its sale and distribution of the Pre-existing Fallout Games by means not authorized by the APA, as well as its attempts to license, assign and/or delegate its rights and obligations under the APA to third parties without Bethesda's consent, constitute material breaches of the APA.

128.   Bethesda has tendered performance of all of its obligations under the APA, but Interplay refuses to perform its end of the bargain. Bethesda remains ready, willing and able to perform.

129.   Bethesda has suffered, is suffering and will continue to suffer irreparable harm and damage as a result of Defendant's wrongful conduct. Defendant will, unless enjoined, continue to act in the unlawful manner complained of herein, all to the irreparable damage of Bethesda's business and reputation. Bethesda's remedy at law is not adequate to compensate it for the injuries suffered and threatened.

130.    By reason of Defendant's wrongful acts, Bethesda has suffered substantial monetary damages which are continuing and to be determined at trial.

## COUNT X

### BREACH OF CONTRACT
### (Trademark License Agreement)

131.    Bethesda incorporates and realleges the allegations of the preceding paragraphs as if fully set forth herein.

132.    Bethesda and Interplay entered into the TLA, a binding and enforceable contract for limited use by Interplay of the FALLOUT Mark for purposes of developing the Fallout MMOG, subject to the terms therein.

133.    Interplay has materially breached the TLA by its continuing and unauthorized use of the FALLOUT Mark in connection with its development of the MMOG code-named "Project: V13," and its attempts to license, assign and/or delegate its rights and obligations under the TLA to third parties without Bethesda's consent.

134.    Bethesda has tendered performance of all of its obligations under the TLA, but Interplay refuses to perform its end of the bargain. Bethesda remains ready, willing and able to perform.

135.    Bethesda has suffered, is suffering and will continue to suffer irreparable harm and damage as a result of Defendant's wrongful conduct. Defendant will, unless enjoined, continue to act in the unlawful manner complained of herein, all to the irreparable damage of Bethesda's business and reputation. Bethesda's remedy at law is not adequate to compensate it for the injuries suffered and threatened.

136.    By reason of Defendant's wrongful acts, Bethesda has suffered substantial monetary damages which are continuing and to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bethesda respectfully requests that this Court grant the following relief against Defendant Interplay:

A.      A declaration that the TLA was terminated and Interplay forfeited all of its license rights under that agreement on April 4, 2009;

B.      A declaration that Interplay no longer has any right to manufacture, sell or distribute the Pre-existing Fallout Games under Section 5.10 of the APA;

C.      A declaration that Interplay's continuing use of the FALLOUT Mark without authorization constitutes willful infringement;

D.      An order preliminarily and permanently enjoining Interplay and all agents, servants, employees, and other persons in active concert or participation with Interplay from the use, manufacture, sale, distribution and promotion of "Fallout Trilogy," "Fallout Collection," "Saga Fallout," individual Pre-existing Fallout Games, and any other product bearing the FALLOUT Mark and is confusingly similar to the Bethesda's "Fallout 3";

E.      An order preliminarily and permanently enjoining Interplay and all agents, servants, employees, and other persons in active concert or participation with Interplay from contributing to or inducing the infringement of Bethesda's FALLOUT Mark;

F.      An order requiring Interplay to file with the Court and serve on Bethesda within seven (7) days after the entry and service upon Interplay of an injunction, a report in writing and under oath setting forth in detail the manner and form in which the Defendant has undertaken to comply and is complying with the Court's injunction, pursuant to section 34(a) of the Lanham Act, 15 U.S.C. § 1116(a);

G.    An order compelling Defendant to comply with each and every act required by Interplay under Section 9.3 of the TLA, entitled "Effect of Termination";

H.    An entry of judgment against Interplay as indicated below:

1.    that Interplay has willfully infringed Bethesda's federally registered trademark rights under 15 U.S.C. § 1114 in the FALLOUT Mark, U.S. Registration Nos. 2,181,084 and 3,583,756;

2.    that Interplay has committed and is committing acts of false designation of origin, false or misleading description of fact, or false or misleading representation in violation of Bethesda's rights under 15 U.S.C. § 1125(a);

3.    that Interplay has engaged in unfair competition in violation of Delaware statutory and common law.

I.    An order for Interplay to pay Bethesda's general, special, actual, and statutory damages as follows:

1.    Bethesda's damages and Interplay's profits pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b) for Interplay's willful violation of Bethesda's registered trademarks; and

2.    Bethesda's damages and Interplay's profits pursuant to Delaware statutory and common law.

J.    An award to Bethesda of its reasonable attorneys' fees, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

K.    An award to Bethesda of its costs in this action, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117; and

L.      Such other and further relief as the Court deems just, reasonable, and appropriate under

the circumstances.


Dated: September 8, 2009                          Respectfully submitted,



                                                  _____/s/ Hugh J. Marbury_____
                                                  Hugh J. Marbury (Bar No. 24653)
                                                  Sonia Cho (Bar No. 26995)
                                                  Benjamin D. Schuman (Bar No. 28829)

                                                  DLA PIPER LLP (US)
                                                  6225 Smith Avenue
                                                  Baltimore, Maryland 21286
                                                  (410) 580-3000

                                                  *Attorneys for Plaintiff*
                                                  *Bethesda Softworks LLC*