IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BETHESDA SOFTWORKS, LLC      :

                              :

    v.                      :   Civil Action No. DKC 09-2357

                              :

INTERPLAY ENTERTAINMENT
CORPORATION                      :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this trademark action are (1) the motion of Plaintiff/Counterclaim Defendant Bethesda Softworks, LLC ("Bethesda Softworks") to dismiss a portion of the counterclaim filed by Defendant/Counterclaim Plaintiff Interplay Entertainment Corporation ("Interplay") (Paper 24); (2) Interplay's motion for attorneys' fees and costs (Paper 46); and (3) Bethesda Softwork's motion to redact the transcript of the court's December 10, 2009 hearing (Paper 55). The issues have been fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the partial motion to dismiss the counterclaim will be granted in part and denied in part, Interplay's motion for attorneys' fees and costs will be denied, and Bethesda Softwork's motion to redact the transcript will be granted.

## I. Background

For purposes of the partial motion to dismiss, the facts are construed in favor of the non-moving party, Interplay. Bethesda Softworks is a developer and publisher of video games for personal computers and various console platforms. (Paper 1 ¶ 9). Bethesda Softworks is incorporated in Delaware, with its principal place of business in Rockville, Maryland. (*Id.*). Interplay is a developer, publisher, and licensor of video game software. (*Id.* ¶ 10). Interplay is incorporated in Delaware, with its principal place of business in Beverly Hills, California. (*Id.*).

This is a trademark case regarding intellectual property rights related to "Fallout," a United States registered trademark for computer video games and related goods. Interplay owned the Fallout trademark (the "Fallout mark") when the mark was first issued on August 8, 1998. (Paper 1 ¶ 16). Interplay first published a Fallout computer game in 1997. (Paper 11, at 26 ¶ 7). During the time that Interplay owned the Fallout mark, Interplay developed, manufactured, and distributed the games "Fallout," "Fallout 2," and "Fallout Tactics: Brotherhood of Steel" (the "Pre-existing Fallout Games"). (Paper 1 ¶ 16).

In June 2004, the parties entered into an Exclusive Licensing Agreement ("ELA"), under which Interplay granted to

Bethesda Softworks exclusive license rights "to future uses of the Fallout property and its associated trademark." (*Id.* ¶ 8). Under the ELA, Interplay retained the right to create a Fallout Massively Multiplayer Online Game ("MMOG"). According to Bethesda Softworks, "An MMOG is a video game made available for online play that supports thousands of players playing the game simultaneously around the world over the Internet, and enables them to compete or cooperate on the game on a massive scale." (Paper 1 ¶ 23).

On April 4, 2007, the parties entered into an Asset Purchase Agreement ("APA") and a Trademark License Agreement ("TLA"). Both the APA and the TLA were governed by Delaware law, as agreed upon by the parties. (Paper 1, Ex. A (APA) § 7.2; Ex. B (TLA) § 13.0). After the parties entered into the APA, Bethesda Softworks registered the Fallout mark in the United States Patent and Trademark Office. (Paper 1, Ex. D).

The APA allowed Bethesda Softworks to purchase all rights to the Fallout mark for $5,750,000 and gave Interplay the authority "to exclusively manufacture, have manufactured, sell and distribute" the preexisting Fallout games. Bethesda Softworks was to have "no financial interest in the sales" of the Pre-existing Fallout Games (the "Merchandising Rights"). (Paper 11, at 26 at ¶ 10-15; Paper 1, Ex. A, at § 5.10).

3

Interplay asserts that the APA does not limit Interplay's distribution channels or permit Bethesda Softworks to approve Interplay's distribution agreements for the Pre-existing Fallout Games. (Paper 11, at 27 ¶ 12). Interplay adds, "Pursuant to the APA and as part of the Merchandising Rights granted to Interplay, Bethesda Softworks only retained the limited right to review and approve Interplay's packaging and marketing materials to ensure that they do not exploit 'any Fallout games or products . . . developed by or for [Bethesda Softworks]' or 'trade upon the look and feel' of the Fallout games developed by Bethesda Softworks." (*Id.* at 27-28 ¶ 13).

The TLA provided that Interplay could develop a MMOG based on Fallout, contingent upon meeting two development and financing conditions. (Paper 1, Ex. B, § 2.1). The TLA stated that Interplay must begin the "full-scale development of its FALLOUT MMOG" and have "secured financing for the FALLOUT MMOG in an amount no less than $30,000,000" within twenty-four months of the effective date of the TLA. (*Id.* § 2.3). The TLA provided that if Interplay did not fulfill either of the two conditions, Interplay would "immediately lose and permanently forfeit its license rights under the [TLA] and the license rights automatically shall end, be void and otherwise terminate

on the anniversary date of the second year after the Effective Date and [the TLA] shall no longer remain in effect." (*Id.*).

Interplay sent a letter to Bethesda Softworks on April 2, 2009, which stated that Interplay had complied with the conditions of the TLA. Bethesda Softworks sent a letter to Interplay in response on April 7, 2009, which stated that Interplay had failed to meet the TLA's preconditions under Section 2.3. Bethesda Softworks's letter also stated that "all license agreements under the [TLA] have been permanently forfeited and automatically ended, are void and otherwise terminated" and told Interplay to immediately cease using the Fallout mark. (Paper 1 ¶ 34).

Bethesda Softworks filed a complaint in this court on September 8, 2009, which alleged that Interplay violated the APA and that the TLA is no longer valid. Bethesda Softworks's complaint contained claims for declaratory judgment, preliminary and permanent injunctions, trademark infringement, unfair competition and false designation of origin, accounting, common law trademark infringement, unfair competition, and breach of contract as to the APA and the TLA. (Paper 1, at 16-26). The court held a hearing on Bethesda Softworks's preliminary injunction motion on December 10, 2009, and denied the motion. (Papers 38 and 43).

Interplay filed its answer and counterclaims on October 11, 2009. (Paper 11). Interplay's counterclaims are breach of contract related to the APA (Count I), breach of contract related to the TLA (Count II), declaratory relief (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), rescission and accounting (Count V), and tortious interference with prospective economic advantage (Count VI).

Section 3.13 of the APA required Interplay to list all outbound licenses it had granted in the Fallout intellectual property to any person. (Paper 11 at 28 ¶ 18). Section 5.12 of the APA provided that if Bethesda Softworks was not satisfied with Interplay's disclosures under Section 3.13, Bethesda Softworks had the option to cancel the transaction. (*Id.* at ¶ 20). Interplay asserts that it complied with the APA's terms when it identified to Bethesda Softworks a license it had granted to Glutton Creeper Games ("Glutton") for the creation of a Fallout pen-and-paper role-playing game based on the preexisting Fallout games. (*Id.* at ¶ 19). Interplay alleges that Bethesda Softworks did not cancel the APA transaction or object to the Glutton game license before executing the APA. (*Id.* at 29 ¶ 21).

Interplay contends that, in August 2007, Bethesda Softworks sent a cease-and-desist letter to Glutton, which demanded that

Glutton stop its development of the pen-and-paper role-playing game because it violated the ELA between Interplay and Bethesda Softworks. (*Id.* at ¶ 22). Glutton sued Interplay in the Superior Court for the County of Los Angeles County, California, alleging breach of contract.

Additionally, Interplay alleges that Bethesda Softworks sent a letter to GameTap LLC ("GameTap"), with whom Interplay was negotiating a content licensing agreement to permit GameTap to distribute Interplay's preexisting Fallout games over its digital download network. In the letter, Bethesda Softworks allegedly stated that Interplay materially breached its agreement with Bethesda Softworks and that Interplay did not possess the rights to distribute or sell the preexisting Fallout games.

On November 9, 2009, Bethesda Softworks filed a partial motion to dismiss Interplay's counterclaims for breach of the implied covenant of good faith and fair dealing (Count IV), rescission (Count V), and tortious interference with prospective economic advantage (Count VI). (Paper 24). On January 19, 2010, Bethesda Softworks filed a motion to redact the transcript of the December 10, 2009 preliminary injunction hearing to seal certain statements regarding trade secrets. (Paper 55). On December 28, 2009, Interplay filed a motion for attorneys' fees

and costs related to the preliminary injunction hearing. (Paper 46).

## II. Partial Motion to Dismiss Counterclaim

### A. Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in

the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)(citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**B. Analysis**

**1. Breach of Implied Covenant of Good Faith and Fair Dealing**

Bethesda Softworks argues that Interplay's counterclaim for breach of the implied covenant of good faith and fair dealing should be dismissed. Bethesda Softworks first asserts that this

claim is duplicative of Interplay's breach of contract allegations. (Paper 24, Attach. 1, at 5). Second, Bethesda Softworks contends that Interplay's allegations do not establish that Bethesda Softworks did anything more than exercise its contractual rights. Bethesda Softworks states, "The implied covenant may not be used to invent contractual obligations that are in conflict with the purpose of the contract as a whole." (Paper 24, Attach. 1, at 6) (citing *Alliance Data Sys. Corp. v. Blackstone Capital Partners, V L.P.*, 963 A.2d 746, 770 (Del.Ch. 2009)). Finally, Bethesda Softworks maintains that Interplay alleges no injury attributable to Bethesda Softworks's conduct. (Paper 24, at 7). Bethesda Softworks argues, "The only cognizable injury alleged by Interplay is its loss of the Glutton Creeper license. However, the Glutton Creeper license was expressly forbidden by the terms of the 2004 [ELA]." (*Id.*).

Interplay counters that it has stated a claim for breach of the implied covenant of good faith and fair dealing. Interplay contends that Bethesda Softworks breached three implied contractual obligations. First, "[e]ven though the TLA does not specifically require Bethesda Softworks to acknowledge Interplay's compliance with the TLA, because Interplay's rights under the TLA require that Interplay meet certain conditions, it should be implied that Bethesda Softworks will in good faith

acknowledge Interplay's compliance with the TLA." (Paper 34, at 4). Interplay asserts that Bethesda Softworks breached this implied obligation because Bethesda Softworks did not acknowledge Interplay's compliance but instead sent a letter on April 7, 2009 that refused to acknowledge that Interplay had fulfilled the TLA's conditions. Second, "[b]ecause the APA specifically identified Glutton Creeper Games as a Fallout licensee at the time Bethesda Softworks executed the APA, Bethesda Softworks should not be permitted to seek to prevent Interplay from pursuing such relationships and agreements with Glutton Creeper." (*Id.* at 5). Interplay contends that Bethesda Softworks breached this implied obligation because Bethesda Softworks sent a letter to Glutton in August 2007, demanding that Glutton cease and desist its development of a pen-and-paper Fallout game. And, third, "as the APA does not limit Interplay's distribution channels for the Interplay-developed Fallout games or permit Bethesda Softworks to approve Interplay's subsequent distribution agreements for such games, it should be implied that Bethesda Softworks will not seek to prevent Interplay from pursuing such relationships and agreements with Game Tap [sic] or any other potential distributor." (*Id.*). Interplay maintains that Bethesda Softworks breached this implied obligation by sending a letter

11

to GameTap that stated that Interplay had materially breached its agreement with Bethesda Softworks and that Interplay did not possess the rights to distribute or sell the preexisting Fallout games.

Maryland follows the choice-of-law rule of *lex loci contractus*, and because breach of the implied covenant of good covenant of good faith and fair dealing is considered a quasi-contract claim, the governing law of the contract controls. *Baker v. Sun Co., Inc.*, 985 F.Supp. 609, 610-11 (D.Md. 1997). Subject to two exceptions not implicated here, Maryland courts will respect choice-of-law provisions found in contracts. *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 618 (Md. 2007). The APA and TLA provide that the laws of Delaware govern them. (Paper 1, Ex. A (APA) § 7.2; Ex. B, (TLA) § 13.0). Accordingly, Delaware law governs Interplay's claim for breach of the implied covenant of good faith and fair dealing.

The covenant of good faith and fair dealing is implied in every agreement in Delaware. *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005). The covenant requires parties "in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the

contract." *Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159

(Del.Ch. 1985). The Supreme Court of Delaware has explained:

> The covenant is "best understood as a way of
> implying terms in the agreement," whether
> employed to analyze unanticipated
> developments or to fill gaps in the
> contract's provisions. Existing contract
> terms control, however, such that implied
> good faith cannot be used to circumvent the
> parties' bargain, or to create a "free-
> floating duty . . . unattached to the
> underlying legal document." Thus, one
> generally cannot base a claim for breach of
> the implied covenant on conduct authorized
> by the terms of the agreement.

*Dunlap*, 878 A.2d at 442 (internal citations omitted).

To state a claim for breach of the implied covenant, a

plaintiff "must allege a specific implied contractual

obligation, a breach of that obligation by the defendant, and

resulting damage to the plaintiff." *Kuroda v. SPJS Holdings,*

*L.L.C.*, 971 A.2d 872, 888 (Del.Ch. 2009) (citing *Fitzgerald v.*

*Cantor*, No. C.A. 16297-NC, 1998 WL 842316, at *1 (Del.Ch. Nov.

10, 1998)). "General allegations of bad faith conduct are not

sufficient. Rather, the plaintiff must allege a specific

implied contractual obligation and allege how the violation of

that obligation denied the plaintiff the fruits of the contract.

Consistent with its narrow purpose, the implied covenant is only

rarely invoked successfully." *Id.* (citing *Superior Vision*

*Servs., Inc. v. ReliaStar Life Ins. Co.*, No. Civ.A. 1668-N, 2006
WL 2521426, at *6 (Del.Ch. Aug. 25, 2006)).

Interplay's claim for breach of the implied covenant
alleges:

> 42. Bethesda materially breached each
> agreement's Implied Covenants of Good Faith
> and Fair Dealing by, among other things,
> attempting to unilaterally terminate
> Interplay's rights under the APA and TLA,
> interfering with Interplay's attempts to
> exercise its Merchandising Rights,
> interfering with Interplay's business
> relationships with its distributors, and
> interfering in Glutton Creeper's game
> license after its disclosure and Bethesda's
> failure to object to the license prior to
> closing the APA.
>
> 43. As a direct and proximate result of
> Bethesda's wrongful conduct, Interplay has
> suffered, is suffering, and will continue to
> suffer substantial damages and irreparable
> harm in an amount to be proven at trial.

(Paper 11 ¶¶ 42-43).

Interplay has not stated a claim for breach of the implied
covenant of good faith and fair dealing. First, there is no
implied contractual obligation under the TLA for Bethesda
Softworks to "in good faith acknowledge Interplay's compliance
with the TLA." If Bethesda Softworks breached the TLA, it did
so by breaching the express provision of Section 2.3. Second,
the APA does not have an implied obligation that "Bethesda will
not seek to prevent Interplay from pursuing such relationships

and agreements with Game Tap or any other potential distributor," because Section 5.10 of the APA expressly protects Interplay's distribution rights.

Third, while there is no express provision in the APA that determines whether Interplay was allowed to grant a license to Glutton for a pen-and-paper Fallout game, Interplay may not imply a free-floating contractual obligation for Bethesda Softworks to honor any licenses that pre-dated the APA and that were disclosed in Part 3.13 of the Disclosure Schedule to the APA. Bethesda Softworks has correctly pointed out that Interplay's license to Glutton was not valid under the ELA before the APA was executed. The ELA expressly assigned Bethesda Softworks all the rights to use the Fallout mark apart from Interplay's rights to own the Fallout trademark, brand, and the Pre-existing Fallout Games, develop a MMOG, and use the "SPECIAL Rules" system to develop, create, promote, and sell non-Fallout video games or products. The ELA granted Bethesda Softworks the exclusive right to "derivative products" of the licensed Fallout mark, and stated:

> . . . With the single and sole exceptions
> of the Pre-existing Fallout Games and the
> MMOG referenced above, no Interplay game or
> Interplay licensed property, using the
> SPECIAL rules or not using the SPECIAL
> rules, shall use, exploit, or reference the
> Fallout name, trademark or brand in any way
> or manner, nor shall Interplay use any other

property, characteristic, or asset of, or
associated with, Fallout and/or the Fallout
brand, nor shall Interplay develop, license
or exploit any game of any type featuring a
post-apocalyptic setting or genre (all such
restrictions, prohibitions, and limitations
being referred to as ("Interplay
limitations)[)].

(Paper 24, Attach. 3, at ¶¶ 2-3).[1]  The parties agree that the

APA superseded the ELA.  But Interplay's act of disclosing its

license to Glutton on the APA's Disclosure Schedule did not

create an obligation for Bethesda Softworks to honor that

license going forward.  Under the APA, Interplay retained the

right exclusively to manufacture, have manufactured, sell and

distribute the Pre-existing Fallout Games.  Bethesda Softworks's

action of sending Glutton a cease-and-desist letter did not deny

Interplay the fruits of the contract because it did not

interfere with Interplay's express Merchandising Rights under

the contract.  Interplay's counterclaim for breach of the

implied covenant of good faith and fair dealing will be

---

[1] "In deciding a Rule 12(b)(6) motion, the court will
consider the facts stated in the complaint and the documents
attached to the complaint.  The court may also consider
documents referred to in the complaint and relied upon by
plaintiff in bringing the action." *Abadian v. Lee*, 117
F.Supp.2d 481, 485 (D.Md. 2000)(citing *Biospherics, Inc., v.
Forbes, Inc.*, 989 F.Supp. 748, 749 (D.Md. 1997), *aff'd*, 151 F.3d
180 (4th Cir. 1998)).  Bethesda did not attach the ELA to its
complaint and Interplay did not attach the ELA to its
counterclaim.  Both parties reference the ELA in their
pleadings, however, so the court may consider it without
converting Bethesda's motion to one for summary judgment.

dismissed.

**2. Tortious Interference with Prospective Economic Advantage**

Bethesda Softworks asserts that a party must allege the following elements to state a claim for tortious interference with prospective economic advantage:

> (1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

(Paper 24, Attach. 1, at 8) (quoting *Audio Visual Assocs., Inc. v. Sharp. Elec. Corp.*, 210 F.3d 354, 261 (D.Md. 2000)).

Interplay counters that Delaware standard for tortious interference with prospective business opportunity applies. The Delaware elements are:

> (a) the reasonable probability of a business opportunity; (b) the intentional interference by defendant with that opportunity; (c) proximate causation and (d) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner.

(Paper 34, at 7) (citing *DeBonaventura v. Nationwide Mutual Insurance Company*, 428 A.2d 1151, 1153 (1981)).

Interplay argues that it has alleged facts for all of the elements of a tortious interference with prospective economic

17

advantage claim under Delaware law. Interplay contends that it had probable business opportunities because it (1) had granted a license to Glutton for the creation of a Fallout pen-and-paper role playing game and (2) it was negotiating a content licensing agreement to permit GameTap to distribute Interplay's Pre-existing Fallout Games over its digital download network. (*Id.* at 8). Interplay asserts that Bethesda Softworks intentionally interfered with those opportunities by sending a cease-and-desist letter to Glutton, which demanded that Glutton stop developing its Fallout pen-and-paper game, and by sending a letter to GameTap, which represented that Interplay did not possess the rights to distribute or sell the preexisting Fallout games. (*Id.*). Additionally, Interplay contends that it alleged proximate causation because it pled that Glutton, because of Bethesda Softworks's conduct, sued Interplay for breach of contract, which deprived Interplay of current and prospective benefits. (*Id.*). Furthermore, Interplay notes that it alleged the following damages: (1) Interplay incurred attorneys' fees, costs, and damages in resolving the lawsuit occasioned by Bethesda Softworks's repudiation of the license, and (2) Interplay was deprived of current and prospective financial benefits and has and will continue to suffer economic damages. (*Id.* at 8-9). Finally, Interplay states that it alleged that

Bethesda Softworks was not competing or protecting its business interests in a fair and lawful manner because Bethesda Softworks did not object to the Glutton game license before it executed the APA and because the APA does not provide that Bethesda Softworks could terminate some of Interplay's rights under the APA, including the Merchandising Rights. (*Id.* at 9).

Bethesda Softworks replies that Interplay's allegations regarding tortious interference are deficient to state a claim under Maryland or Delaware law because "Interplay fails to identify a single prospective business opportunity or economic advantage that was adversely affected by Bethesda Softworks's allegedly tortious conduct." (Paper 45, at 6).

It is unclear whether Maryland or Delaware law should apply to evaluate Interplay's claim for tortious interference with prospective economic advantage. Bethesda Softworks correctly notes,

> Maryland applies the doctrine of *lex loci delicti* to tort claims, so that such claims "are to be determined by the law of the state in which the alleged tort took place." *Philip Morris, Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. 2000). Interplay's Counterclaim is silent as to where Bethesda's alleged torts occurred, and therefore it is unclear which state law should apply [to] its claim for tortious interference with prospective economic advantage.

(Paper 24, Attach. 2, at 8 n. 5).  In any event, Interplay has not stated a claim under Maryland or Delaware law.  Under Maryland law, Interplay has not alleged that Bethesda Softworks sent the letters to Glutton or GameTap without right or justifiable cause or with malice.  Under Delaware law, Interplay has not alleged a *reasonable* probability of a business opportunity with Glutton because its license to Glutton was prohibited by the ELA.  Considering Interplay's allegations regarding Glutton in light of Bethesda Softworks's privilege to protect its business interests in a fair and lawful manner, Interplay has not alleged that Bethesda Softworks interfered with business that Interplay could have reasonably expected.  Under either state's law, Interplay has not alleged that Bethesda Softworks's actions proximately caused any damage to its relationship with GameTap.  Interplay does not allege that Bethesda Softworks's letter caused GameTap to refuse to distribute the Pre-existing Fallout Games.  Finally, Interplay's general allegation that Bethesda Softworks "has engaged in tortious conduct to interfere with Interplay's ongoing and prospective business relations with current and potential customers and distributors" lacks the factual specificity, such as the customers' and distributors' names, required to state a plausible claim for relief under Rule 12(b)(6).  (Paper 11, at

33 ¶ 50). Therefore, Interplay's claim for tortious interference with prospective economic advantage will be dismissed for failure to state a claim.

### 3. Rescission

Bethesda Softworks argues that Interplay's rescission claim should be dismissed because Interplay waived its right to rescission of the APA and TLA. Bethesda Softworks asserts that Interplay did not demand rescission within a reasonable time of what Interplay alleges were Bethesda Softworks's breaches of the contracts and therefore has waived its right to the remedy. (Paper 24, Attach. 1, at 11). Bethesda Softworks cites *Ryan v. Tad's Enterprises, Inc.*, 709 A.2d 682, 699 (Del.Ch. 1996), in which the Court of Chancery of Delaware noted, "It is a well-established principle of equity that a plaintiff waives the right to rescission by excessive delay in seeking it." Additionally, Bethesda Softworks quotes *Gaffin v. Teledyne, Inc.*, Civ. A. No. 5786, 1990 WL 195914, at *18 (Del.Ch. 1990), *aff'd in part and rev'd in part*, 611 A.2d 467 (Del. 1992), in which the Court of Chancery stated, "It is plaintiff's burden to prove promptness, not defendant's to prove delay." Bethesda Softworks contends that Interplay alleged that Bethesda Softworks breached the APA in August 2007 and that Interplay did

not demand rescission until it filed its counterclaims on October 17, 2009. (Paper 24, at 11).

Alternatively, Bethesda Softworks argues that Interplay does not have a legal basis for seeking rescission in this case. (*Id.*). Interplay asserts that Bethesda Softworks's termination of Interplay's rights amounts to a "failure of consideration," but Interplay has kept the $5,750,000 in consideration that Bethesda Softworks paid under the APA. (*Id.* at 12).

Interplay responds that its rescission claim is timely and that Bethesda Softworks's laches defense is not a proper basis for dismissal. (Paper 34, at 12). Interplay asserts, "Interplay's counterclaims allege in substance, if not in form, that Bethesda Softworks never intended to honor any of Interplay's rights under the APA or TLA . . . ." so "Interplay should be entitled to rescind the APA and TLA . . . ." (*Id.* at 13-14). Interplay also argues that Bethesda Softworks is attempting to terminate a portion of the APA, but that the APA "must stand or fall as an entirety" and be rescinded entirely. (*Id.* at 14).

Interplay's rescission claim is a prayer for a specific type of relief, as with its claim for an accounting, that is not a cause of action. If Interplay ultimately prevails on any claims, the court will consider at that time whether rescission

22

is an appropriate remedy.  Furthermore, it is not appropriate to consider Bethesda Softworks's laches affirmative defense at this time.  An affirmative defense, such as laches, is not ordinarily considered on a motion to dismiss because the plaintiff is not required to negate it in its complaint.  The purpose of a motion to dismiss under Rule 12(b)(6) is to "test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses."  *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).  "A court may consider defenses on a 12(b)(6) motion only 'when the face of the complaint clearly reveals the existence of a meritorious affirmative defense.'"  *E. Shore Markets, Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 185 (4th Cir. 2000); *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 348 49 (2[d] ed. 1990).  The Delaware courts agree that a laches defense is not a proper basis for dismissal.  *See Abry Partners V, L.P. v. F & W Acquisition LLC* 891 A.2d 1032 (Del.Ch. 2006).  Therefore, Bethesda Softworks's motion to dismiss Interplay's counterclaim for rescission will be denied.

## III. Motion to Redact Transcript

Bethesda Softworks seeks to redact the transcript of the December 10, 2009 preliminary injunction hearing about the "development of a particular game not at issue in this

proceeding," including "confidential and trade secret information about the timing of game development, financial budgets, number of employees working on production and other information concerning the current development of this game." (Paper 55, at 2). Bethesda Softworks specifically requests that the following lines be redacted: Page 54, lines 21-25; Page 69, line 15 through Page 70, line 9; Page 94, lines 8-16; Page 96, lines 6-15; and Page 137, line 19 through Page 138, line 12. Interplay has not opposed Bethesda Softworks's request.

Bethesda Softworks's motion will be treated as a motion to seal. Bethesda Softworks's motion must comply with Local Rule 105.11, which provides:

> Any motion seeking the sealing of pleadings, motions, exhibits or other papers to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protections. The Court will not rule upon the motion until at least 14 days after it is entered on the public docket to permit the filing of objections by interested parties. Materials that are the subject of the motion shall remain temporarily sealed pending a ruling by the Court. If the motion is denied, the party making the filing will be given an opportunity to withdraw the materials.

There is also a well-established common law right to inspect and copy judicial records and documents. *See Nixon v. Warner*

*Communications, Inc.*, 435 U.S. 589, 597 (1978). If competing interests outweigh the public's right of access, however, the court may, in its discretion, seal those documents from the public's view. *See In re Knight Publishing Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

Furthermore, prior to sealing any documents, the court must provide notice of counsel's request to seal and an opportunity to object to the request before making its decision. *Id*. Either notifying the persons present in the courtroom or docketing the motion "reasonably in advance of deciding the issue" will satisfy the notice requirement. *Id*. at 234. Finally, the court should consider less-drastic alternatives, such as filing redacted versions of the documents. If the court decides that sealing is appropriate, the court should provide reasons, supported by specific factual findings, for its decision to seal and for rejecting alternatives. *Id*. at 235.

Bethesda Softworks argues that it has "spent years determining the confidential and trade secret business plans for this game, and has kept the particulars of its plans and production confidential" and that "[p]ublishing the transcript through, for example, Pacer, would provide Plaintiff's competitors valuable information that they could use in competition with Plaintiff." (*Id*. at 2-3). Because Bethesda

25

Softworks's motion is unopposed and because the lines Bethesda Softworks seeks to redact do, in fact, relate to the development of a game not at issue in this case, Bethesda Softworks's motion to seal will be granted.  The following lines of the December 10, 2009 transcript will be redacted: Page 54, lines 21-25; Page 69, line 15 through Page 70, line 9; Page 94, lines 8-16; Page 96, lines 6-15; and Page 137, line 19 through Page 138, line 12.

## IV.  Motion for Attorneys' Fees and Costs

Interplay moves for attorneys' fees and costs that it incurred in defending against Bethesda Softworks's motion for preliminary injunction.  Interplay asserts that Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), provides in pertinent part that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party" and that this case is exceptional because Bethesda Softworks continued to seek a preliminary injunction even after it became clear that it did not have evidence to support its motion.  (Paper 57, at 5, 8).  Interplay also argues that it is a "prevailing party" within the meaning of Section 1117 of the Lanham Act.  (*Id.* at 15).  Bethesda Softworks responds that an award of costs would be unwarranted and an award of attorneys' fees is untimely because Interplay is not yet a "prevailing party" as the court has not reached the merits of the case.  (Paper 58, at 11-12).

Furthermore, Bethesda Softworks asserts that even if Interplay were a "prevailing party," it should not receive attorneys' fees because this is not an "exceptional case" under the Lanham Act. (*Id.* at 17).

At this stage of the litigation, it is premature to award Interplay attorneys' fees and costs. Courts of the United States, including the federal courts, follow the "American Rule," meaning that each party to a lawsuit must bear its own attorneys' fees unless there is an express statutory authorization to the contrary. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Under the American Rule, each party must also bear its own litigation costs except a limited number of enumerated costs (e.g., filing fees and deposition transcripts) that are awarded to a prevailing party under Rule 54(d) of the Federal Rules of Civil Procedure. Interplay is not a "prevailing party" because the legal relationship between the parties was not altered by the court's denial of Bethesda Softworks's motion for a preliminary injunction. *See Sole v. Wyner*, 551 U.S. 74, 82 (2007) (holding that "[t]he touchstone of the prevailing party inquiry . . . is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute" and declining to find the plaintiff a prevailing party where it obtained a preliminary,

but not permanent, injunction). Furthermore, this is not an exceptional case under the Lanham Act. Section 35(a) of the Lanham Act provides that a court may award attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). An award of attorneys' fees is equally available to prevailing plaintiffs and defendants. *The Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.*, 958 F.2d 594, 599 (4th Cir. 1992), *cert. denied*, 506 U.S. 862 (1992) (noting that a finding of bad faith on the part of a plaintiff is not necessary for a prevailing defendant to prove an "exceptional" case, yet a prevailing plaintiff must show the defendant acted in bad faith). A case is exceptional when the conduct of the losing party is "malicious, fraudulent, deliberate, and willful." *Id.* at 600. Other factors to be considered in determining whether a case is exceptional include economic coercion, groundless arguments, and failure to cite controlling law. *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 144 (4th Cir. 2000). Here, Interplay has not shown that Bethesda Softworks pursued a preliminary injunction to enforce its trademark rights because of malice or fraud. Nor has Interplay shown that Bethesda Softworks engaged in economic coercion, pursued groundless arguments, or failed to cite controlling law.

Therefore, Interplay's motion for attorneys' fees and costs will be denied.

**V.    Conclusion**

For the foregoing reasons, Plaintiff's partial motion to dismiss Defendant's counterclaim will be granted in part and denied in part, Defendant's motion for attorneys' fees and costs will be denied, and Plaintiff's motion to redact the transcript will be granted.  A separate Order will follow.


                                    /s/
                          _____
                          DEBORAH K. CHASANOW
                          United States District Judge