IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BETHESDA SOFTWORKS LLC             :

                                      :

     v.                            :    Civil Action No. DKC 09-2357

                                        :

INTERPLAY ENTERTAINMENT
CORPORATION                      :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this trademark action is a motion for sanctions filed by Plaintiff Bethesda Softworks LLC ("Bethesda Softworks"). (ECF No. 106). Because the issues have been fully briefed and no hearing is necessary, the court now rules. *See* Local Rule 105.6. For the reasons that follow, Bethesda Softworks' motion will be granted in part and denied in part.

## I. Background

Some familiarity with the underlying facts of this case is presumed. In brief, the principal issue is the ownership of certain intellectual property rights associated with "Fallout," a popular series of computer and console role-playing games. Plaintiff Bethesda Softworks maintains that it now owns all these Fallout-related rights by virtue of two agreements it signed with Defendant Interplay Entertainment Corporation ("Interplay") in 2007. For its part, Interplay insists that it

retained certain rights to the Fallout games – rights that it continues to hold today.

The case began on September 8, 2009, when Bethesda Softworks filed a complaint against Interplay. (ECF No. 1). Soon thereafter, discovery problems began to arise. In November 2009, for instance, the parties filed a proposed protective order. (ECF No. 30). The day after that proposed order was filed, the court instructed the parties to add a provision governing documents filed under seal. (ECF No. 33). The parties failed to do so for several months. Instead, they chose to make "productions of thousands of pages" under the unapproved protective order until August 9, 2010, when they finally moved for entry of a protective order. (ECF No. 76).

On February 25, 2010, before an answer to the initial complaint was filed, the parties submitted a proposed scheduling order. (ECF No. 62). The court did not approve that scheduling order, but the parties proceeded with discovery.[1] A few months after the parties began discovery, on August 2, 2010, Bethesda Softworks filed a motion to compel responses to thirteen interrogatories and at least five document requests. (ECF No. 70-1). The court granted much of the motion to compel on

_____

[1]     Bethesda Softworks later moved to withdraw the order. (ECF NO. 78).

January 13, 2011 and instructed Interplay to comply with that order no later than February 7, 2011. (ECF Nos. 97, 98).

During a hearing on January 14, 2011, the court encouraged the parties to work together to resolve the remaining discovery issues and set a schedule. Unfortunately, the parties have been unable to agree on much of anything. In a joint status report dated March 1, 2011, the parties reported that they could not agree on a schedule, could not agree on whether Interplay had sufficiently complied with the decision on the motion to compel, and could not even agree on whether they had met to discuss a scheduling order for the remainder of discovery. (ECF No. 107).

Instead of resolving these disputes through cooperation, on February 28, 2011, Bethesda Softworks filed a motion for sanctions, alleging that Interplay failed to comply with the court's prior rulings on discovery. (ECF No. 106). The motion seeks, among other things, the exceptional sanction of default judgment. Interplay opposed on March 17 and responded in kind, accusing Bethesda Softworks of acting in bad faith and labeling the motion for sanctions "legally frivolous and factually dishonest." (ECF No. 108). Bethesda Softworks replied on April 4. (ECF No. 109).

## II.  Analysis

Bethesda Softworks moves for sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2)(A). That rule permits a

district court to impose certain punitive measures, up to and including dismissal, on any party who disobeys a discovery order. Fed.R.Civ.P. 37(b)(2)(A). "Rule 37(b)(2) gives the court a broad discretion to make whatever disposition is just in the light of the facts of the particular case." 8B Charles Alan Wright, et al., *Federal Practice & Procedure* § 2289 (3[d] ed. 2010); *see also Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 518 (D.Md. 2000) ("Federal district courts possess great discretion to sanction parties for failure to obey discovery orders.").

Emphasizing this broad discretion, Bethesda Softworks asks the court to impose "the most severe in the spectrum of sanctions": default judgment in its favor and dismissal of all of Interplay's counterclaims. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). But "[w]hile the imposition of sanctions under Rule 37(b) lies within the trial court's discretion, it is not a discretion without bounds or limits." *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995) (quotation marks and brackets omitted). This is particularly so when a party requests the rather draconian penalty of dismissal or default. *Id.* Thus, a district court should consider four factors in determining what sanctions to impose under Rule 37: "(1) whether the non-complying party acted in bad faith; (2) the amount of prejudice that

4

noncompliance caused the adversary; (3) the need for deterrence of the particular sort of non-compliance; and (4) whether less drastic sanctions would have been effective." *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (quotation marks omitted). Neither party has directed its arguments towards this standard.[2]

In effect, the parties focus almost exclusively on the first part of the test: Interplay's alleged bad faith.[3] In Bethesda Softworks' view, Interplay has engaged in a long pattern of discovery abuse. According to Bethesda Softworks, this pattern began with a series of baseless objections to certain discovery requests and culminated in Interplay's non-compliance with the court's January 13 order on a motion to compel. Interplay responds that it raised only good faith objections to Bethesda Softworks' discovery requests, even if those objections were ultimately overruled (for the most part).

---

[2] It may be an abuse of discretion to apply the dismissal sanction without applying that standard. *See Riggins v. Steel Techs.*, 48 F.App'x 460, 462 (4th Cir. 2002).

[3] Bad faith is one factor to consider in imposing sanctions for failure to comply with a court order, but "nothing in the rule requires that the failure be on account of bad faith." *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 26 (1st Cir. 2006); *cf. Hoyle v. Freightliner, Inc.*, --- F.3d ----, 2011 WL 1206658, at *4 (4th Cir. Apr. 1, 2011) (explaining that bad faith is not required to impose discovery sanctions under Rule 37(c)(1)).

It also maintains that it has endeavored to comply with its understanding of the court's order on January 13.

Interplay has not completely and properly complied with the court's order; Document Request Nos. 33 and 34 are illustrative. Those requests asked for documents "relating to" the terms "minimum financing" and "full-scale development" found in the Trademark Licensing Agreement ("TLA") between Bethesda Softworks and Interplay.[4] Interplay initially objected that the terms were too ambiguous and undefined to specify any documents. The court, in its letter order on the motion to compel, rejected that argument; the order indicated that Interplay should apply a "good faith understanding" of the terms – which were in a document Interplay signed – and respond to the requests to the best of its ability. (ECF No. 97, at 4).

Now, Interplay continues to complain that the terms "minimum financing" and "full-scale development" are undefined; consequently, those terms "cannot be enforced" because "there is no yardstick by which to measure Interplay's compliance." This position is not argued in good faith. For one, Interplay's

_____

[4]  Although Bethesda Softworks' motion to compel was granted as to these document requests, the prudent party would avoid using "omnibus phrases" such as "relating to" altogether. *See, e.g.*, *Leisure Hospitality, Inc. v. Hunt Props., Inc.*, No. 09-CV-272-GKF-PJC, 2010 WL 3522444, at *3 (N.D.Okla. Sept. 8, 2010) (listing cases establishing that such phrases are often objectionable).

argument that these two contract terms are so hopelessly vague that it cannot offer any reasonable interpretation of their meaning would effectively moot much of this case. One of Interplay's principal contentions is that, pursuant to the TLA, it holds a license to use certain Fallout-related marks. But the TLA would be unenforceable if it contained material terms that were so "vague or indefinite" as to fail to provide a reasonable standard for determining whether a breach has occurred. *Cont'l Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1230 (Del.Ch. 2000). Thus, Interplay cannot seek the protection of a license while simultaneously objecting to discovery on a basis that would render that very license void.

In contradictory fashion, Interplay also indicates that it has produced documents relating to the purportedly indefinable provisions. As to Document Request No. 33, for instance, Interplay states that it has produced documents that "Interplay contends demonstrate compliance" with the minimum financing provision. Interplay must do more than respond with documents evidencing compliance. Bethesda's request was phrased in broader terms. Interplay should have responded with all documents *relating to* "full-scale development" and "minimum financing," whether those documents demonstrated compliance, non-compliance, or something else in between. *See, e.g.*, *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 378

(S.D.Ind. 2009) ("Producing only those documents that are deemed helpful to the producing party's litigation position – parsing out the bad from the good – is, of course, impermissible.").

Similarly, with Document Request No. 34, Interplay adopted another limiting interpretation:  it refused to produce any documents after April 4, 2009, the deadline in the TLA for securing financing and commencing full-scale development.  The court's order on January 13 did not apply any temporal limit. Interplay nevertheless maintains that this court suggested a temporal limit during a hearing on January 14.  (ECF No. 108, at 6 ("Interplay believed that the Court clarified that it was first to produce the documents for the time period up to and including the April 4, 2009 contract deadline and that the parties were to further meet and confer regarding the need for the post deadline materials.").  There was no such ruling.  At the hearing, the court specifically addressed the issue of post-April 4 documents and acknowledged that they were "relevant . . . to the question of how far [Interplay] had gotten by the time of the purported termination."  (ECF No. 100, at 44); *cf. Carr v. Double T. Diner*, --- F.R.D. ---, No. WMN-10-CV-0230, 2010 WL 4365579, at *1 (D.Md. Nov. 2, 2010) ("The scope of relevancy under discovery rules is broad such that relevancy encompasses any matter that bears or may bear on any issue that is or may be in the case.").  Interplay cites certain language

wherein the court distinguished between the potential usefulness of pre- and post-April 2009 materials. As the transcript indicates, however, that discussion occurred only in the context of deciding to whom the materials should be disclosed (*i.e.*, whether disclosure should be limited to outside counsel). Because Interplay raised concerns about disclosing proprietary information to Bethesda Softworks, counsel were instructed to confer on whether the post-April 2009 material should be disclosed to anyone other than outside counsel. There was no indication that counsel were to discuss whether post-April 2009 materials would be disclosed at all. The court never once indicated that Interplay was free to ignore the unambiguous order to make a complete production.[5]

Interplay's response to Interrogatory No. 14 was also problematic. In response to a question asking for "all facts relating to any financing" after April 4, 2009, Interplay rather conclusorily stated that: (1) Masthead Studios "provided

---

[5] Interplay's misconstruction of the court's January 13 order seems to be indicative of a disappointing lack of care on Interplay's part, particularly when paired with Interplay's failure to file a supplemental response to Interrogatory No. 16 because "it missed the reference" to that interrogatory in the written order. The parties are cautioned that the failure to exercise appropriate care in fulfilling their discovery obligations will not provide a valid excuse for noncompliance. *Cf. Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 413 (4th Cir. 2010) (explaining that "carelessness" and "inattentiveness" is not excusable).

development services in accord with the parties' agreements";
(2) Interplay also contemplated, but did not complete,
additional financing with another party; and (3) Interplay
produced documents related to that third party. The factual
information contained in this answer is decidedly vague, and the
mere reference to other documents does not help matters much.
"Case law in federal district courts generally disfavors
attempts to respond to interrogatories by referring to other
documents. Even if such documents are relevant, there is value
in clear and precise interrogatory answers." *Dairyland Power
Co-op v. United States*, 79 Fed.Cl. 722, 726 (2007) (citations
omitted).

Still, Bethesda Softworks likely goes too far in accusing
Interplay of engaging in a "year-long, bad faith campaign to
impede discovery." (ECF No. 109, at 3). Importantly, this is
not an instance where the responding party has entirely refused
to respond to discovery. And not all of these discovery
disputes evidence misconduct.[6] For instance, Bethesda Softworks
complains that it has received "no documents showing the
identity or number of Masthead or Interplay personnel working on

_____

    [6]    "That two persons disagree does not mean that one of
them has bad motives." *Big Dipper Entm't, LLC v. City of
Warren*, --- F.3d ----, No. 09-2339, 2011 WL 1378417, at *4 (6th
Cir. Apr. 13, 2011).

the development of the [Massively Multiplayer Online Game, or]
MMOG, or, if there are such people, documents showing the time
periods they worked on the MMOG." (ECF NO. 109, at 14). It is
not clear that such information would be responsive to any of
the document requests the court has seen. In addition, Bethesda
Softworks asserts that it has not seen "any large volume of
documents," which it apparently takes to mean there must be
other undisclosed documents. It says there must be more
documents relating to Interplay's development agreement with
Masthead Studios, even though Interplay insists it has produced
them all.[7] It also conclusorily labels Interplay's responses to
Document Request Nos. 35 and 36 "dubious." Such arguments do
not establish bad faith because "the court is loathe to credit a
party's mere hunch about the existence of additional documents
responsive to a particular discovery request." *Hubbard v.
Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008); *see also Trilegiant
Corp. v. Sitel Corp.*, --- F.R.D. ----, No. 09 Civ. 6492, 2010 WL
4668950, at *7 (S.D.N.Y. Nov. 15, 2010) (declining to order
party to "respond more fully" to document requests, where the
requesting party did not point to any specific documents the
responding party failed to produce). Moreover, Bethesda

---

[7]    Interplay states it has produced all documents
responsive to that document request, except for documents
falling outside of the (erroneous) time limit of April 4, 2009.

Softworks protests that Interplay's interrogatory responses contain legal arguments rather than facts. While it is true that there is a great deal of unnecessary legal argument in some of the responses, the responses also contain responsive facts and therefore do not support a finding of bad faith.

There is some degree of prejudice resulting from Interplay's questionable compliance with the mandates of discovery. Bethesda Softworks primarily emphasizes the delay that has resulted from Interplay's unwillingness or inability to comply completely with all discovery requests. Indefinite delay, disruption of deadlines, and the continuation of discovery can amount to prejudice. *See Goodman v. Praxair Servs., Inc.*, 632 F.Supp.2d 494, 508 n.6 (D.Md. 2009) (listing cases); *Aerodyne Sys. Eng'g, Ltd. v. Heritage Int'l Bank*, 115 F.R.D. 281, 288 (D.Md. 1987) ("[The plaintiff]'s delinquent and inadequate interrogatories and document responses have resulted in prejudice to [the defendant] by preventing it from conducting discovery, evaluating the merits of the claims against it, and from adequately preparing its defense to this matter."). And, to be sure, there has been some degree of delay in this case, as the parties originally intended to complete discovery by the end of 2010. On the other hand, this delay is not entirely attributable to Interplay. Indeed, Bethesda Softworks conceded, in its motion to "withdraw" its proposed scheduling order, that

the schedule had become unworkable for several reasons. Among other things, "the schedules of the parties and their counsel," as well as certain disputes over who should be permitted to review the materials produced in discovery, caused some degree of delay. (ECF No. 78, at 3). Thus, it is disingenuous to attribute an entire year of delay to Interplay. Bethesda Softworks does not point to any other form of prejudice, though one might surmise that the withholding of material information is prejudicial in itself.

There is a need to deter the type of gamesmanship that one might suspect is happening in this case. *See Mut. Fed. Sav. & Loan Ass'n v. Richards & Assoc., Inc.*, 872 F.2d 88, 93 (4th Cir. 1989) ("[S]talling and ignoring the direct orders of the court . . . must obviously be deterred."). Discovery is meant to take the game playing *out* of the trial process, not simply add another stage to the process where the parties can cagily engage in obfuscation and evasion. *See Newsome v. Penske Truck Leasing Corp.*, 437 F.Supp.2d 431, 437 (D.Md. 2006) (explaining discovery was designed to make trial "less of a game of blind man's bluff and more of a fair contest" (quotation marks omitted)). A lack of forthrightness early in the discovery process is especially troubling, because "such action can have a spiraling effect on the future scheduling of discovery, and inject into the litigation collateral disputes which typically require the

intervention of the court to resolve." *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 653 (D.Md. 1997). Indeed, one might say that is exactly what happened here.

The last factor, the effectiveness of less drastic sanctions, counsels against the imposition of the heavy sanction Bethesda Softworks seeks. Interplay largely claims innocent error lies behind its discovery failures. If that is indeed the case, a lesser sanction should encourage it to be more conscientious. If it is not, Bethesda Softworks will have the later opportunity to seek harsher sanctions. In addition, "the Fourth Circuit has . . . emphasized the importance of warning a party prior to dismissing [or defaulting] its claim as a discovery sanction." *Camper*, 200 F.R.D. at 518; *see also Steigerwald v. Bradley*, 229 F.Supp.2d 445, 449 (D.Md. 2002) ("[T]he Fourth Circuit has encouraged trial courts initially to consider imposing sanctions less severe than default, such as awards of costs and attorneys' fees." (quotation marks omitted)). In some sense, the prior ruling on Bethesda Softworks' motion to compel was a signal that any evasive tactics should be put to rest. Yet that opinion did not explicitly invoke the possibility of default and dismissal as a sanction for continuing non-compliance. Bethesda Softworks alternatively asks the court to strike any affirmative defense or counterclaim based on "license or right." Practically

14

speaking, such a sanction would have the same effect as the powerful dismissal and default sanction discussed above. *See, e.g., Parrott v. Wilson*, 707 F.2d 1262, 1273 n.26 (11th Cir. 1983) (recognizing that the striking of a defense "would be tantamount to granting a motion for summary judgment"). Given the lack of any clear notice to Interplay that such sanctions were a possibility if its behavior continued, these powerful tools are not appropriately invoked (yet).

As another alternative, Bethesda proposed that the court "prohibit Interplay . . . from supporting or opposing any claim or defense in this matter with: (a) any document not produced by Interplay in violation of the Court's January 13, 2011 discovery order; or (b) any factual matter not included in Interplay's responses to Bethesda's interrogatories in violation of the Court's January 13, 2011 discovery order." This sanction, again, is quite harsh and typically requires some strong evidence of prejudice. *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F.Supp.2d 378, 421 (S.D.N.Y. 2010) ("Preclusion is a harsh sanction preserved for exceptional cases where a . . . party's failure to provide the requested discovery results in prejudice to the requesting party."). Moreover, a blanket order of preclusion at this stage might effectively bar Interplay from supplementing its present responses with information that it later discovers itself.

Interplay should not entirely escape without sanction, as it has pressed some more-than-questionable objections, without substantial justification, which caused unnecessary delay in the face of a clear discovery order. Accordingly, the court will order Interplay to pay $2,000 to offset a portion of the attorney's fees and costs Bethesda Softworks has incurred in bringing this motion.[8] *See* Fed.R.Civ.P. 37(b)(2)(C) (providing for the payment of fees as a possible sanction); *see also Marquis v. Chrysler Corp.*, 577 F.2d 624, 642 (9th Cir. 1978) (terming a $2,000 sanction for failure to produce documents a "light sanction"). It is also expected to rectify its earlier discovery responses to provide complete answers – particularly as to Document Request Nos. 33 and 34. Interplay should consider itself on notice that harsher sanctions may be forthcoming if the evasive discovery tactics continue.

---

[8] Both attorneys on brief for Bethesda Softworks have apparently been admitted to the bar for more than 10 years. Even if one applies the lowest presumptive rate in this district for attorneys with 10 years of experience (*i.e.*, $225), a $2,000 sanction reflects fewer than 9 hours of work (not including costs). *See* Rules and Guidelines for Determining Attorneys' Fees in Certain Cases for the District of Maryland § 3. That is not an unreasonable amount of time for preparing this motion for sanctions. Bethesda Softworks also sought fees and costs associated with its earlier motion to compel, but those expenses are not recoverable under Rule 37(b)(2). *See* 8B Charles Alan Wright, et al., *Federal Practice & Procedure* § 2289 (3d ed. 2010) ("The expenses that may be recovered under [this rule] are those 'caused by the failure' to obey an order and therefore do not include the expense of obtaining the order itself.").

As for any future discovery, the court expects the parties to conduct it in a cooperative fashion, rather than viewing every discovery issue as an opportunity to spar. *See Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 361 n.3 (D.Md. 2008) (emphasizing importance of cooperation). Parties (and their attorneys) are not meant to use discovery "as a trampoline on which to exercise their mutual animosity." *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 571 (D.Md. 2010). Thus, the parties should engage in genuine meet and confer discussions, during which the parties attempt to resolve their differences - rather than simply stating their opposing positions and refusing to budge.[9] *See* Local Rule 104.7 ("Counsel shall confer with one another concerning a discovery dispute and *make sincere attempts to resolve the differences between them*." (emphasis added)). Hopefully, with a little collaboration, "[t]he lawyers are spared the embarrassment of making clearly erroneous arguments . . . [and] [t]he clients are spared needless expense incurred in the litigation of discovery disputes and the attendant delay." *Higginbotham v. KCS Int'l, Inc.*, 202 F.R.D. 444, 453 (D.Md. 2001).

---

[9] The court also hopes to avoid future arguments over who said what and when they said it during meet and confer conferences. Sophisticated and competent counsel, such the attorneys on both sides of this case, have more important issues upon which to focus their energies.

The reality in this case is that face-to-face meetings are impractical, given that counsel for the parties are separated by several thousand miles. Even so, working together means more than swapping "sharply worded letters and emails between counsel." *Watts v. Allstate Indem. Co.*, No. 2:08-cv-01877, 2010 WL 4225561, at *3 (E.D.Cal. Oct. 20, 2010). If, after frank discussion, the parties determine that some intractable issue requires court involvement, then they may file an appropriate motion. In doing so, they would be well advised to present simply the facts and allow the court to draw its own conclusions, rather than using heated rhetoric that only serves to escalate matters. (*See, e.g.*, ECF No. 106-1, at 2 (accusing Interplay of "a series of misrepresentations, frivolous objections and arguments, and other dilatory tactics"); *id.* at 4 (arguing Interplay is "simply playing for time, has performed, and is continuing to perform, its discovery obligations in bad faith, and has no intention of engaging in meaningful and required discovery"); ECF No. 108, at 2 (contending Bethesda Softworks' motion was "based on blatant misrepresentations"); *id.* at 10 ("Bethesda stoops to half truths . . ."); *id.* at 11 (labeling Bethesda Softworks' motion "legally frivolous and factually dishonest")). Calm, cooperative resolution of discovery issues will serve everyone's interests.

## III. Conclusion

For the foregoing reasons, the motion for sanctions filed by Bethesda Softworks will be granted in part and denied in part. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge