# Exhibit 32

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BETHESDA SOFTWORKS LLC<br><br>Plaintiff,<br><br>v.<br><br>INTERPLAY ENTERTAINMENT CORP.<br><br>Defendant | Case No. 09 CV 2357 (DKC)<br><br>SUPPLEMENTAL RESPONSES OF INTERPLAY ENTERTAINMENT CORP TO BETHESDA SOFTWORKS FIRST SET OF INTERROGATORIES |
| INTERPLAY ENTERTAINMENT CORP.<br><br>Counter-Claimant,<br><br>v.<br><br>BETHESDA SOFTWORKS LLC, and Roes 1 through 20, Inclusive,<br><br>Counter-Defendants. | |

PROPOUNDING PARTY: Plaintiff/Counter-Defendants: Bethesda Softworks, LLC.
RESPONDING PARTY: Defendant/Counter-Claimant: Interplay Entertainment
SET NUMBER: ONE (1)

Defendant/Counter-Claimant Interplay Entertainment, Inc. (hereinafter "Interplay") hereby provides Supplemental Responses to certain Interrogatories propounded by Bethesda Softworks, LLC's ("Bethesda"), as follows:

1

## PRELIMINARY STATEMENT

These supplemental responses are made subject to Interplay's initial responses, the General Objections and specific objections thereto, all of which are incorporated herein by this reference. As such the objections will not be re-stated as to each supplemental response herein.

Each supplemental response is subject to all appropriate objections (including, but not limited to, objections concerning competency, relevancy, materiality, propriety and admissibility) which would require the exclusion of any statement contained herein, and/or document referenced herein or attached hereto, were it to be made or presented by a witness, present and testifying in court. Also, such objections and grounds are reserved and may be asserted at the time of trial or any other time during the pendency of this action.

Interplay has not completed its discovery or investigation of the facts relating to this action or its discovery in this action, nor has it completed trial preparation of this action, as of the date of these responses. Therefore, the following responses are given without prejudice to its right to produce, at the time of trial or at any other time, subsequently discovered evidence relating to the proof of presently known material facts and to produce all evidence whenever discovered, related to the proof of subsequently discovered facts. Also, Interplay does not purport to state herein anything more than information presently known or discovered. Interplay reserves the right to continue discovery and investigation in this matter of facts, witnesses, and supporting data that may reveal information which, if it had presently within its knowledge, would be included in these responses. Consequently, these interrogatories are responded to fully insofar as Interplay is presently aware of such information and/or documentation, and Interplay is not precluded from presenting evidence at trial discovered after the date of these responses.

Except for the explicit facts admitted herein, no admissions of any nature whatsoever are implied or should be inferred. The fact that any interrogatory has been responded to or document produced should not be taken as an admission of the existence

of any of the facts set forth in or assumed by such response or production of such document, or that such answer constitutes admissible evidence.

The entirety of the foregoing Preliminary Statement is hereby incorporated by this express reference into each of the Responses set forth below, rather than repeating it verbatim for each such Response, so that such Responses do not become unduly lengthy or repetitious.

## SUPPLEMENTAL RESPONSES TO INTERROGATORIES

### INTERROGATORY NO .3

State in dollars and units the monthly sales since first sale of FALLOUT Games in the United States and any other jurisdiction each Game sold in connection with any FALLOUT designation.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3.

See sales and royalty reports produced as Bates Nos. IPE 9809- IPE 9907.

### INTERROGATORY NO. 12

Describe with particularity all facts relating to Defendant's alleged compliance with the provisions of Section 2.3 of the TLA that by April 4, 2009 it shall have "secured financing for the FALLOUT MMOG in an amount no less than US$30,000,000" including, but not limited to, each and every source of such financing, the amount provided by each source, and the terms and conditions of such financing.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12

Per Section 2.3 of the TLA Interplay was to have "secured financing," the meaning of which is vague at best and not defined in the TLA. However, Plaintiff unequivocally has admitted Interplay was not required to have a line of credit or to have held $30,000,000 in a bank account as of the April 4, 2009Thus, Interplay contends that it was to arrange for sufficient financing to develop an MMOG with a budget of $30,000,000, which was not restricted or limited to the cost of development of the MMOG alone. In fact, the TLA does not define what $30,000,000 is to be used for.

Further, Section 2.3 does not specify how or when Responding Party is to receive the money, nor does the TLA require Interplay to spend $30,000,000. Further, nothing in the TLA required Interplay to hold $30,000,000 in its own bank account, have a line of credit at its disposal, for $30,000,000 from a single source, or that the entirety of the funding must be paid in a single installment prior to April 4, 2009, as opposed to having the funds available on an as needed basis to develop, market and advertise a quality product, over the course of development and thereafter which could include amounts contributed by third parties. Further, the TLA does not require Interplay to notify Bethesda that "minimum financing" has been "secured" or specify any method or recipient for such notification. Interplay was only required to deliver a quality product, approved by Bethesda, within a specific period of time. Interplay satisfied its obligations under Section 2.3 of the TLA through a funding agreement with Interactive Game Group that provided up to $15 million and through a binding letter of intent for development services and subsequent agreement with Masthead Studios that provided approximately $20 million in development services and technology licenses. Additional facts demonstrating Responding Party's compliance are set forth in the deposition testimony of Herve Caen, taken December 4, 2009, at pp. 8:9-15:1; 16:21-18:14; 20:17-22:23; 34:6-36:14; 40:6-41:21; 43:1-23; 44:8-46:2; 46:25-47:12; 76:10-78:4; 81:19-86:1; 101:17-102:4; 103:5-21; 105:11-116:21; 139:7-141:8; 190:21-215:9; as well as in Mr. Caen's declaration in opposition to the preliminary injunction motion filed by Plaintiff.

## INTERROGATORY NO. 14

Describe with particularity all facts relating to any financing contemplated, arranged, agreed to, delivered, provided, or otherwise made available for the FALLOUT MMOG from April 5, 2009 through the present.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14

Masthead Studios has provided development services in accord with the parties' agreements. In addition to development services provided by Masthead and in conjunction with the I2G agreement, responding party contemplated additional financing

4

through a third party, BVT-IV, which transaction could not be consummated due to this lawsuit. Interplay has produced the responsive documents related to BVT-IV.

**INTERROGATORY NO. 15**

Describe with particularity all facts relating to Defendant's alleged compliance with the provisions of Section 2.3 of the TLA that by April 4, 2009 it shall have "commenced full-scale development of the FALLOUT MMOG" including, but not limited to, the identity of each and every person who has participated in or has knowledge related to such "full-scale development" and the amount of time and monetary resources expended by any person or entity in connection with such "full-scale development."

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15**

Interplay commenced development of the Fallout MMOG as early as November 2007. As of April 4, 2009, Interplay employed game designers, writers, and artists, who had substantially completed the Fallout Online game design, including but not limited to the Fallout Online Wiki design document, which has been produced confidentially "for outside counsel's eyes only" as Bates Nos. IPE 5439-IPE 7622 (only material that existed as of April 4, 2009 is included in the initial production of the Fallout Online design Wiki, per the Court's instructions at the hearing on January 14, 2011). Prior to April 4, 2009, Interplay also had (i) created substantial concept art related to the Fallout Online project; (ii) entered into a binding LOI with Masthead Studios in Bulgaria that provided development services and technology licenses related to the game engine and development tools worth millions of dollars; and (iii) Masthead Studios used Interplay's design documents, including the Fallout Wiki and concept art, in conjunction with its game engine and tool set to create a proof of concept demo game that was simultaneously playable with several characters, who were controlled by separate players over an on-line network between Europe and North America. The combination of Interplay's substantial game design with Masthead's development team and technology, and resultant production of a playable game space satisfied the condition for "full scale development," which is not defined in the TLA. See also, deposition testimony of Herve Caen taken December 4, 2009, at pp. 34:6-36:13; 40:3-41:21; 48:21-49:4; 76:10-81:18; 163:5-170:13; 190:21-

215:9 as well as Mr. Caen's declaration in opposition to the preliminary injunction motion filed by Plaintiff. The people who worked on Fallout Online for Interplay prior to April 4, 2009 include Jason Anderson, Chris Taylor, Mark O'Green, Serg Souleimann, Kevin Stocker, Marshall Kautz, and the programmers, artists and designers at Masthead Studios whose names are unknown to Interplay. Interplay does not know the total amount of time or monetary resources that has been expended by Masthead since Masthead has not accounted to Interplay as of this date. Interplay has spent in excess of $2,000,000 on development.

**INTERROGATORY NO. 18**

Describe the relationship between any current or past employees, directors, shareholders or principals of Interplay and any current or past employees, directors, shareholders or principals of Interactive Game Group, Masthead Studios, or any other person or entity that you have identified in connection with Interrogatory Nos. 14-17 concerning Interplay's alleged compliance with Section 2.3 of the TLA.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO.18**

There is no relationship other than arm's length business transactions between any current or past employees, directors, shareholders or principals of Defendant and any current or past employees, directors, shareholders or principals of Interactive Game Group, Masthead Studios, or any other person or entity identified in connection with Interrogatory Nos. 14-17 concerning Defendant's alleged compliance with Section 2.3 of the TLA.

**INTERROGATORY NO. 19**

Describe in detail the basis for any claim by Defendant and all facts or persons with knowledge that would support or tend to support a claim that Plaintiff's claims are barred or barred in part by the doctrine of estoppel, waiver, ratification, acquiescence, consent, laches or unclean hands.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO.19

Interplay holds, and at all relevant times held, licenses to manufacture, sell and distribute the Pre-Existing Fallout Games and to develop, promote, market, and sell a Fallout-branded MMOG. Plaintiff, by and through its employees, officers, and managing agents possessed both actual and constructive notice of packaging and distribution channels used by Interplay to manufacture, sell, and promote the Pre-Existing Fallout Games both before and after execution of the APA. Interplay also holds, and at all relevant times held a license to create a Fallout-branded MMOG, which both parties and their respective representatives always understood to mean an MMOG that incorporated and was based on content derived from the Fallout universe, such as characters, stories, weapons, etc. By and through its employees, officers, and managing agents Plaintiff possessed both actual and constructive knowledge of Interplay's development efforts with respect to the Fallout-branded MMOG, including knowledge that the content thereof was derived from and contained elements of the Fallout universe, (originally created by Interplay) including copyrighted or copyrightable content related to characters, backstory, etc. Persons who have knowledge of the basis for Defendants defenses include, but are not limited to: Herve Caen; Chris Nelson, in house counsel; Jeffrey F. Gersh and Lawrence Brennan of The Gersh Law Firm, Inc. Interplay's litigation counsel. Additionally, James Leder, Grif Lesher, Marcia Mitnick, Robert Altman, Vlatko Andonov, Pete Hines, Matt Firor, Matt Grandstaff, Michael Dominguez, and Todd Howard all may have factual information relevant to Interplay's defenses. All communications between Mr. Caen and Mr. Nelson, between Mr. Caen and Interplay's outside counsel and between Mr. Nelson and Interplay's outside counsel are attorney client privileged and confidential. Given that discovery is continuing there may be additional persons that have knowledge relating to Interplay's counterclaims and affirmative defenses. Mr. Caen, Mr. Nelson can be reached through counsel.

### INTERROGATORY NO. 20

Identify all persons with knowledge relating to Defendants' counterclaims and describe the nature of their knowledge and their addresses and telephone numbers.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 20

Those persons who have knowledge of the counterclaims are: Herve Caen; Chris Nelson, in house counsel; Jeffrey F. Gersh and Lawrence Brennan of The Gersh Law Firm, Inc. Interplay's litigation counsel; James Leder; Grif Lesher; Robert Altman; and Vlatko Andonov. With the exception of Interplay's counsel, the nature of these individuals' knowledge is derived from their involvement in the transactions at issue in this action and in the conduct and interactions between the Parties related to their respective rights and obligations under the APA and TLA. The nature of the respective persons knowledge concern the fraud perpetrated upon Interplay, the mischaracterization of the APA and TLA by Plaintiff, the facts relating to Plaintiff's mischaracterization of the interpretation of the APA and TLA by Plaintiff, the fraud perpetrated by Plaintiff's upon Interplay that induced Interplay to enter into the APA and TLA, when Plaintiff had no intention of permitting Interplay to develop a Fallout MMOG and Plaintiff's attempts to interfere with Interplay's ability to do so, and that Plaintiff has suffered no damages by virtue of Interplay building a Fallout MMOG. All communications between Mr. Caen and Mr. Nelson, between Mr. Caen and Interplay's outside counsel and between Mr. Nelson and Interplay's outside counsel are attorney client privileged and confidential. Given that discovery is continuing there may be additional persons that have knowledge relating to Interplay's counterclaims and affirmative defenses. Mr. Caen, Mr. Nelson can be reached through counsel.

### INTERROGATORY NO. 21

Describe in detail the basis for any claim by Defendant and all facts or persons with knowledge that would support or tend to support a claim that Plaintiff has breached the APA or the TLA or breached an implied covenant of good faith and fair dealing.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO.21

Among other things, Plaintiff's material breaches and repudiation of the Parties' agreements prevented Interplay from realizing the benefits of its bargain, unjustly enriched Plaintiff, demonstrate that there was never a meeting of the minds, and result in a failure of consideration. Plaintiff's conduct includes but is not limited to refusing to

approve art work and to permit Interplay to promote the Fallout-branded MMOG on its website; bad faith refusals and failures to refuse and approve the Fallout Online website, newsletters, and other marketing materials; interfering with or attempting to interfere with Interplay's relationships with its current and prospective distributors exploitation of its rights to sell, manufacture, and promote the Pre-existing Fallout Games; and the unilateral and unjustifiable termination and repudiation of Interplay's rights under both the APA and TLA. The persons who may have knowledge of relevant facts and who are known to Interplay at this time include Herve Caen, Chris Nelson, James Leder; Grif Lesher; Marcia Mitnick; Robert Altman; Vlatko Andonov; Pete Hines; Matt Firor; Matt Grandstaff; Michael Dominguez and Todd Howard. It is without question that the Parties contemplated that Interplay would build a Fallout MMOG having elements that related to its previous Fallout games, so that any goodwill would be associated with the Fallout games. Any other interpretation would be ludicrous given the substantial good will Plaintiff's believe is related to Fallout. Plaintiff's would not approve of a game that did not have the look and feel of Fallout.

## INTERROGATORY NO. 22

Describe in detail the basis for any claim by Defendant and all facts that would support or tend to support a claim that Defendant is entitled to an estimated $15 million in royalties from Plaintiff.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO.22

Among other things, Plaintiff's material breaches and repudiation of the Parties' agreements prevented Interplay from realizing the benefits of its bargain, unjustly enriched Plaintiff, demonstrate that there was never a meeting of the minds, and result in a failure of consideration. Plaintiff's conduct includes but is not limited to refusing to approve art work and to permit Interplay to promote the Fallout-branded MMOG on its website or through newsletters, which interfered with marketing and fundraising efforts; interfering with or attempting to interfere with Interplay's relationships with its current and prospective distributors exploitation of its rights to sell, manufacture, and promote the Pre-existing Fallout Games; and the unilateral and unjustifiable termination and

repudiation of Interplay's rights under both the APA and TLA. Interplay seeks rescission of the APA and the attendant TLA as a remedy. In the event rescission would restore the parties to the pre-contract status quo and result in the reinstatement of the 2004 Exclusive Licensing Agreement, Interplay would be entitled to royalties as provided in the ELA. $15 million royalties is subject to an accounting and is merely an estimate based on public statements and announcements made by Plaintiff concerning sales of Fallout 3 and is likely substantially higher due to ongoing sales of Fallout 3 and its expansions, and following the release of Plaintiff's Fallout: New Vegas.

### INTERROGATORY NO. 23

Describe in detail the basis for any claim by Defendant and all facts or persons with knowledge that would support or tend to support a claim that Plaintiff has engaged in tortious conduct with prospective economic advantage.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO.23

This interrogatory is moot because the counterclaim was dismissed.

### INTERROGATORY NO. 24

Describe in detail the basis for any claim by Defendant and all facts or persons with knowledge that would support or tend to support any claim for damages by Defendant from Plaintiff.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO.24

Among other things, Plaintiff's material breaches and repudiation of the Parties' agreements prevented Interplay from realizing the benefits of its bargain, unjustly enriched Plaintiff, demonstrate that there was never a meeting of the minds, and result in a failure of consideration. Plaintiff's conduct includes but is not limited to refusing to approve art work and to permit Interplay to promote the Fallout-branded MMOG on its website, which interfered with marketing and fundraising efforts; interfering with and/or attempting to interfere with Interplay's relationships with its current and prospective distributors, exploitation of its rights to sell, manufacture, and promote the Pre-existing

Fallout Games; and the unilateral and unjustifiable termination and repudiation of Interplay's rights under both the APA and TLA. In reliance on the APA and TLA, Interplay has expended sums in development of a Fallout-branded MMOG. Interplay has been damaged to the extent Plaintiff's contract breaches result in loss of those investments. Because of Plaintiff's baseless termination of Interplay's rights under the TLA and APA, Interplay has lost the opportunity to secure expected pre-release distribution and publishing agreements that are standard in the industry and would have resulted in significant revenue to Interplay. Interplay also is damaged to the extent Plaintiff's repudiation of the APA and TLA result in the loss of revenue to be gained from ongoing sales of the Pre-Existing Fallout Games and the successful launch of a Fallout-branded MMOG. Interplay has not completed discovery or its accounting of these sums and reserves its right to further supplement this response.

Dated: February 8, 2011

THE GERSH LAW FIRM, INC.

By: _____
JEFFREY F. GERSH, ESQ., #93855
15821 Ventura Boulevard, Suite 515
Encino, California 91436
Telephone (818) 536-5700
Facsimile (818) 981-4618
Email: jgersh@gershlegal.com
Counsel for Defendant and Cross-Claimant
Interplay Entertainment Corp.

and

BREGMAN, BERBERT,
SCHWARTZ & GILDAY
Geoffrey T. Hervey, #04243
7315 Wisconsin Avenue, Suite 800 West
Bethesda, Maryland 20814
Telephone: (301) 656-2707
Facsimile: (301) 961-6525
Email: Ghervey@bregmanlaw.com
Counsel for Defendant and Cross-Claimant
Interplay Entertainment Corp.

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 15821 Ventura Boulevard, Suite 515, Encino, California 91436.

On February 8, 2011, I served the following document(s) described as SUPPLEMENTAL RESPONSES OF INTERPLAY ENTERTAINMENT CORP TO BETHESDA SOFTWORKS FIRST SET OF INTERROGATORIES on all interested parties to this action, as follows:

☒  by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelopes addressed as follows:

Howard Stahl, Esq.
Fried, Frank Harris Shriver, et al.,
1001 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20004
Tel: (202) 639-7111
Fax: (202) 639-7003
howard.stahl@friedfrank.com
Counsel for Plaintiff/Counter-Defendant
Bethesda Softworks, LLC

☒  **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with The Gersh Law Firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Encino, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐  **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to _____ for delivery to the above address(es).

☒  **BY E-MAIL:** I caused the above-referenced document to be transmitted via e-mail from hnapier@gershlegal.com to the directed the above- addressed counsel.

☐  **BY PERSONAL SERVICE:** I personally delivered such envelope by hand to the offices of the addressee(s) listed on the service list.

☒  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 8, 2011, at Encino, California.

HEATHER NAPIER