# EXHIBIT 1

# EXHIBIT 1

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Settlement Agreement"), dated as of December 12, 2011 (the "Effective Date"), is entered into by and between Bethesda Softworks LLC, a Delaware limited liability company ("Bethesda"), and Interplay Entertainment Corp., a Delaware corporation ("Interplay"). Interplay and Bethesda may be referred to hereinafter jointly as the "Parties" or individually as a "Party." Capitalized terms not defined herein have the meaning ascribed to them in the APA or TLA (each as defined below), as applicable.

WHEREAS, the Parties entered into (1) that certain Asset Purchase Agreement, dated as of April 4, 2007 (the "APA"), relating to, among other things, Bethesda's purchase of the Fallout Intellectual Property and (2) that certain Trademark License Agreement, dated as of April 4, 2007 (the "TLA"), relating to, among other things, Interplay's license to use the Licensed Marks as provided in the TLA; and

WHEREAS, Bethesda filed an action in the United States District Court for the District of Maryland (the "Court") entitled Bethesda Softworks LLC v. Interplay Entertainment Corp., Civ. Case No. 09-CV-02357 (DKC) (the "Action"), against Interplay; and

WHEREAS, Bethesda filed a related action in the United States District Court for the Central District of California entitled Bethesda Softworks LLC v. Masthead Studios LTD., Civ. Case No. 2:11-cv-07534-JFW(Ex), against a company named Masthead Studios LTD ("Masthead") (the "Masthead Action"); and

WHEREAS, Interplay and Bethesda have asserted in the Action claims against one another arising out of or related to the APA or the TLA (the "Claims"); and

WHEREAS, Interplay and Bethesda wish to resolve the Claims amicably and without resort to the time, effort and expense of additional litigation and without the admission of any liability; and

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, and for such other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in full and complete release and discharge and settlement of the Claims, the Parties hereby agree as follows:

1. <u>Effectiveness of Settlement Agreement</u>. This Settlement Agreement shall be effective as of the Effective Date.

2. <u>Conditions, Motions and Settlement Amount</u>.

(a) The Parties agree to file with the Court a Joint Motion to Dismiss With Prejudice and Proposed Order of Dismissal ("Joint Motion to Dismiss"), pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, in the form annexed hereto as <u>Exhibit A</u>, dismissing with prejudice their claims and counter-claims that they have asserted against each other in this Action. The Parties agree that the Court's order dismissing the Action with prejudice (the "Order") shall incorporate and include the terms of this Settlement Agreement. The date that the Court enters the Order shall be referred to hereafter as the "Entry Date."

(b) Within ten (10) days of the Entry Date, Interplay shall deliver to Bethesda a certificate executed by a duly authorized officer of Interplay stating that Interplay has complied with its obligations under Sections 3(a), (f) and (g) of this Settlement Agreement (the "Officer's Certificate").

(c) Within five business days after receipt by Bethesda of the Officer's Certificate and written wire instructions from counsel for Interplay below, Bethesda shall pay or cause to be paid the sum of Two Million Dollars ($2,000,000.00 (U.S.)) ("Settlement Amount"), by wire transfer of immediately available funds pursuant to the written instructions provided by such counsel for Interplay.

3. <u>Matters Related to the APA and TLA</u>.

(a) Within ten (10) days of the Entry Date, Interplay shall deliver to Bethesda a copy of the Gold Masters for the Pre-existing Fallout Games. For purposes of this Settlement Agreement, "Gold Master" means the non-copy protected and non-encrypted final copies of each Pre-existing Fallout Game in English and all localized versions thereof. Bethesda will provide access instructions and an FTP address to which Interplay may transfer the files relating to the "Gold Masters" no later than the Entry Date. Interplay represents that it does not have any copies of the source code for the Pre-existing Fallout Games, but to the extent that it finds a copy or obtains such a copy, Interplay agrees to promptly provide such copy to Bethesda via the same FTP address.

(b) Except as otherwise provided in Section 3.4 of the TLA, as of the Effective Date, Interplay relinquishes, releases, disclaims, abandons, and forever gives up any and all rights and claims that Interplay has, may have had in the past, or would have had in the future under the TLA and all such rights shall be terminated, and Sections 3.4 and 9.3 of the TLA shall become effective. Without limiting the foregoing, Interplay, directly or indirectly, shall have no rights of any kind to develop, publish or exploit any Fallout-branded MMOG or any MMOG using any Fallout Intellectual Property. Interplay shall have, and has, no rights of any kind, other than those rights set forth in Section 3(c) of this Settlement Agreement, to use or exploit in any manner or means the Fallout brand or any Fallout Intellectual Property, all such previously granted rights being terminated.

(c) Interplay shall have the right to continue to sell the Pre-existing Fallout Games pursuant to the terms of the APA through and including December 31, 2013. As of December 31, 2013, Interplay relinquishes, releases, disclaims, abandons, and forever gives up

any and all rights and claims that Interplay has, may have had in the past, or would have had in the future under Section 5.10 of the APA and all such rights shall be terminated as of said date (the "Section 5.10 Termination Date"). For the avoidance of doubt, Interplay's rights to sell the Pre-existing Fallout Games under Section 5.10 of the APA shall not include (1) porting any Pre-existing Fallout Games to any platform other than the PC platform on which the Pre-existing Fallout Games are being sold as of the Effective Date, (2) making any modifications to any Pre-existing Fallout Games (but Interplay may "patch" the software only as necessary to enable the Pre-existing Fallout Games to operate on the PC platform so Interplay may exploit its Section 5.10 rights), or (3) streaming any Pre-existing Fallout Games except under Interplay's written arrangement as of the Effective Date with a service called OnLive™.

(d)     The Section 5.10 Termination Date is inclusive of all sell-off periods. Interplay shall, in good faith, not attempt to manipulate or avoid the effect of the termination of Section 5.10 of the APA by channel-stuffing or by any other means. Within 10 days after the Section 5.10 Termination Date, Interplay shall return to Bethesda the Gold Masters for the Pre-existing Fallout Games and any other materials containing any Fallout Intellectual Property. Interplay represents that it does not have any copies of the source code for the Pre-existing Fallout Games, but to the extent that it finds a copy or obtains such a copy (even if after the Section 5.10 Termination Date), Interplay agrees to promptly provide such copy to Bethesda via the same FTP address to be provided to Interplay. As of the Section 5.10 Termination Date, Bethesda is free to exploit the Pre-existing Fallout Games and all rights thereto in whatever manner or means Bethesda determines in its sole and absolute discretion.

(e)     Interplay covenants and agrees not to interfere with in any way Bethesda's use of, or rights to, the Fallout Intellectual Property. For the avoidance of doubt, except as

provided in Section 3(c) of this Settlement Agreement, Interplay has no license rights or other rights to use in any way any of the Fallout Intellectual Property.

(f) Within ten (10) days of the Entry Date, Interplay shall (1) remove all Fallout Intellectual Property and, subject to Section 3.4 of the TLA, anything else that in any way relates or pertains to "Fallout" from any MMOG being developed by or on behalf of Interplay, (2) take down the entirety of the Fallout Online website (www.fallout-on-line.com) and all related domain names, and (3) initiate all steps necessary to transfer and assign www.fallout-on-line.com and any and all related domain names to Bethesda (including, but not limited to, unlocking each such domain name at the relevant Registrar, obtaining and sending a domain name transfer authorization code to Bethesda's designated contact, and responding to any and all further authorization requests required by the relevant Registrar to complete the transfer). Bethesda agrees that the timing of the payment of the Settlement Amount is not contingent on completion of the transfer and assignment of the domain names, provided, however, that Interplay has included in the Officer's Certificate a statement certifying all steps that have been taken under this Section. Interplay will execute promptly such other documents that may subsequently be required to effectuate the intent of this provision and cooperate with Bethesda to accomplish the same.

(g) Within ten (10) days of the Entry Date, Interplay shall use its best efforts to cause Masthead to cease any and all activities that Interplay is engaged in with Masthead or that Masthead itself is engaged in to develop a Fallout MMOG that incorporates any Fallout Intellectual Property or otherwise uses the Fallout Intellectual Property. Interplay shall further use its best efforts to cause Masthead to destroy any and all materials related to the Fallout Intellectual Property that were provided by or created at the request of Interplay or otherwise,

and shall include in the Officer's Certificate a statement certifying that it has used its best efforts to accomplish the foregoing, describing the steps that Interplay has taken. For the avoidance of doubt, Interplay will be deemed to have satisfied its obligations hereunder in the event that it makes reasonable, good faith efforts to instruct Masthead in writing in accordance with this provision, certifies to Bethesda that it has done so, and provides to Bethesda a copy of its instructions to Masthead. Interplay is not required to take any further action to be deemed to have used its "best efforts."

    4.    <u>Limited Mutual Releases and Covenant Not To Sue</u>.

    (a)    As of the Entry Date, Interplay, on behalf of itself and of each of its corporate parents, subsidiaries and affiliates, and, in their capacities as such, its and their past and present shareholders, directors, officers, employees, plan beneficiaries, agents and representatives and the successors, heirs and assigns of any of them and any other Person (as defined in the APA) that claims through, on behalf of or for the benefit of any of the foregoing (collectively, the "Interplay Releasors"), hereby irrevocably and unconditionally fully, finally and forever waive, release, acquit and discharge Bethesda, and its past and present parents, subsidiaries, affiliates, and, in their capacities as such, each of its past and present shareholders, officers, directors, principals, partners, members, managers, predecessors, trustees, plan beneficiaries, plan sponsors, employees, agents, counsel, and servants, and the successors, heirs and assigns of any of them, (collectively, the "Bethesda Releasees") from any and all claims, obligations, demands, actions, causes of action and liabilities, of whatsoever kind and nature, character and description, whether in law or equity, whether sounding in tort, contract or under other applicable law, whether known or unknown, whether asserted or unasserted and whether anticipated or unanticipated, of or by the Interplay Releasors, which the Interplay Releasors, or

any of them, or anyone claiming through them, on their behalf or for their benefit have or may have or claim to have, now or in the future, against any Bethesda Releasee arising from any event, transaction, matter, circumstance or fact whatsoever, from the beginning of time to the Effective Date of this Settlement Agreement, including, but not limited to, in any way arising out of or as a result of, related to, underlying, with respect to or in connection with or based in whole or in part on (1) any provision of the APA (other than Section 2.2 and Article I as it relates to Section 2.2), (2) any provision of the TLA, and (3) costs, fees and any other matters related to the conduct of the litigation in the Action, including, without limitation, all claims brought in the Action or that could have been brought in the Action (other than in respect to Section 2.2 of the APA); provided, however, that this Section 4(a) shall not apply to obligations created by or claims arising under this Settlement Agreement.

    (b) As of the Entry Date, Bethesda, on behalf of itself and of each of its corporate parents, subsidiaries and affiliates, and, in their capacities as such, its and their past and present shareholders, directors, officers, employees, plan beneficiaries, agents and representatives and the successors, heirs and assigns of any of them and any other Person (as defined in the APA) that claims through, on behalf of or for the benefit of any of the foregoing (collectively, the "Bethesda Releasors"), hereby irrevocably and unconditionally fully, finally and forever waive, release, acquit and discharge Interplay, and its past and present parents, subsidiaries, affiliates, and, in their capacities as such, each of its past and present shareholders, officers, directors, principals, partners, members, managers, predecessors, trustees, plan beneficiaries, plan sponsors, employees, agents, counsel, and servants, and the successors, heirs and assigns of any of them, (collectively, the "Interplay Releasees") from any and all claims, obligations, demands, actions, causes of action and liabilities, of whatsoever kind and nature,

character and description, whether in law or equity, whether sounding in tort, contract or under other applicable law, whether known or unknown, whether asserted or unasserted and whether anticipated or unanticipated, of or by the Bethesda Releasors, which the Bethesda Releasors, or any of them, or anyone claiming through them, on their behalf or for their benefit have or may have or claim to have, now or in the future, against any Interplay Releasee arising from any event, transaction, matter, circumstance or fact whatsoever, from the beginning of time to the Effective Date of this Settlement Agreement, including, but not limited to, in any way arising out of or as a result of, related to, underlying, with respect to or in connection with or based in whole or in part on (1) any provision of the APA (other than Article I, Sections 2.1, 2.3, 2.8, Article III, Article IV, Sections 5.1, 5.3, 5.4, 5.5, 5.6, 5.7, 5.8, 5.9 and Article VII (collectively, the "APA Excepted Provisions")), (2) any provision of the TLA, and (3) costs, fees and any other matters related to the conduct of the litigation in the Action, including, without limitation, all claims and counterclaims brought in the Action or that could have been brought in the Action (other than in respect to the APA Excepted Provisions); provided, however, that this Section 4(b) shall not apply to obligations created by or claims arising under this Settlement Agreement.

(c) Notwithstanding anything to the contrary in the releases contained in Section 4(a) and (b), these releases do not cover (1) any conduct occurring after the Effective Date or (2) any conduct of any of the distributors used by Interplay in connection with Interplay's rights under Section 5.10 to the extent such conduct was not in compliance with the terms of the APA.

(d) Bethesda covenants and agrees not to sue any of the distributors used by Interplay in connection with Interplay's rights under Section 5.10 of the APA for any of the distributors' past conduct and conduct through the Section 5.10 Termination Date to the extent

such conduct is consistent with the manner in which Interplay and its distributors have distributed the Pre-existing Fallout Games as of the Effective Date in accordance with Section 5.10 of the APA.

      5.      <u>Representations and Warranties</u>. Each Party represents and warrants that: (a) it has full authority to enter into this Settlement Agreement and to execute and deliver the releases given pursuant hereto, (b) the execution, delivery, and performance by it of this Settlement Agreement and all related documentation are within its corporate powers, have been duly authorized by all necessary corporate action, and do not contravene its certificate of incorporation or bylaws or any law, court order, or contractual restriction, and (c) no consent, approval, order or authorization of, or registration, declaration or filing with, any court, administrative agency, or other government authority is required to make this Settlement Agreement valid and enforceable as to it.

      6.      <u>No Admission of Wrongdoing</u>. It is understood and agreed that this Settlement Agreement is being entered into by way of compromise of claims and without admitting any liability or wrongdoing by either Party hereto.

      7.      <u>Binding Nature of Settlement Agreement</u>. This Settlement Agreement, and each and all of the representations, warranties, and covenants of the Parties made herein, are (from and after the Effective Date) binding upon the Parties and each and all of their respective successors, assigns, heirs, representatives, subsidiaries, and affiliates, and shall inure solely to the benefit of the Parties, and each and all of their respective successors, assigns, heirs, and representatives. Each Party agrees to take all further reasonable steps required to effectuate and implement the provisions and terms of this Settlement Agreement.

8. <u>Execution</u>. This Settlement Agreement may be executed in one or more counterparts, including facsimile counterparts, each of which will be considered an original instrument, but all of which will be considered one and the same agreement, and will become binding when one or more counterparts have been signed by each of the Parties hereto and delivered to counsel for the respective Parties.

9. <u>Merger Clause</u>. The Parties acknowledge, warrant and represent that no oral representation or promise, express or implied (including, without limitation, representations of fact or opinion), other than those expressly set forth in this Settlement Agreement and the Exhibit hereto, has been made by either of the Parties hereto concerning the settlement of the Claims.

10. <u>Mutual Drafting and Representation by Counsel</u>.

(a) The Parties hereto agree that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be applied in the construction or interpretation of this Settlement Agreement, it being agreed that all Parties participated jointly and equally in the drafting hereof.

(b) The Parties hereto agree that, in executing this Settlement Agreement, they are acting on the advice of their counsel, that they have read and understand the terms and provisions of this Settlement Agreement and the effect thereof, that their attorney has explained the same to them, that they have had a reasonable amount of time to consider and review the Settlement Agreement's terms and conditions, and that they are executing this Settlement Agreement voluntarily.

11. <u>Modification and Waiver</u>. No supplement, modification, or amendment of this Settlement Agreement shall be binding, unless it is in writing and signed by both Parties

hereto. No provisions of the Settlement Agreement may be waived unless in writing, signed by the Party to be charged therewith. Waiver of any one provision shall not be deemed to be a waiver of any other provision. The failure of any Party hereto to enforce at any time any provision of this Settlement Agreement shall not be construed to be a waiver of such provision, nor in any way affect the validity of this Settlement Agreement or any part hereof or the right of any Party thereafter to enforce each and every such provision.

12. <u>Choice of Law</u>. THIS SETTLEMENT AGREEMENT AND THE RIGHTS AND DUTIES OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED, ENFORCED AND PERFORMED IN ACCORDANCE WITH THE LAW OF THE STATE OF DELAWARE, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAWS THAT WOULD REQUIRE THE APPLICATION OF LAWS OF ANOTHER JURISDICTION. THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND SHALL RETAIN EXCLUSIVE JURISDICTION OVER THIS SETTLEMENT AGREEMENT AND ANY CLAIMS RELATED THERETO.

13. <u>Confidentiality</u>. Except to the extent required by law, regulation or court order, the Parties shall keep the fact and terms of this Settlement Agreement confidential and issue no press releases or other public statements relating to the Settlement Agreement prior to the Entry Date or Order. It is understood that the Settlement Agreement is filed with and part of a court order and therefore the parties are free to disclose and discuss publicly the terms thereof. While the parties each believe in the merits of their respective case, the settlement was reached to avoid the expense and burden of litigation. Other than the foregoing, the parties agree not to further editorialize or comment on the merits of the litigation.

14. <u>Notices</u>.  All notices and other communications required or permitted to be given under this Settlement Agreement shall be in writing and delivered by overnight courier or by confirmed facsimile during regular business hours of the recipient to the addresses or facsimile numbers set forth below or to such other addressed specified in writing and in advance by the applicable party:

If to Bethesda, to:

>Bethesda Softworks, LLC
>1370 Piccard Drive, Suite 120
>Rockville, MD 20850
>Facsimile: (301) 926-8010
>Attention: Vlatko Andonov, President
>
>Bethesda Softworks, LLC
>1370 Piccard Drive, Suite 120
>Rockville, MD 20850
>Facsimile: (301) 990-7025
>Attention: J. Griffin Lesher, Executive Vice President – Legal

With a copy to:

>Howard H. Stahl, Esquire
>Fried, Frank, Harris, Shriver & Jacobson LLP
>801 17th Street NW
>Washington, D.C. 20006
>Telephone: (202) 639-7111
>Facsimile: (202) 859 7003
>Email: howard.stahl@friedfrank.com

If to Interplay, to:

>Interplay Entertainment Corp.
>12301 Wilshire Boulevard
>Suite 502
>Los Angeles, CA 90025
>Facsimile: (310) 979-7171
>Attention: Herve Caen, Chief Executive Officer

With a copy to:

Jeffrey F. Gersh, Esquire
Gersh|Derby, Attorneys at Law
15821 Ventura Boulevard, Suite 515
Encino, CA 91436
Facsimile: (818) 981-4618
Email: jgersh@gershderbylaw.com

15. <u>Fees and Costs</u>. Bethesda and Interplay agree that each party shall bear its own attorneys' fees and costs incurred in the Action, including all attorneys' fees and costs arising out of the preparation and performance of this Settlement Agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement.

BETHESDA SOFTWORKS LLC

By: _____
Name: Vlatko Andonov
Title: President

INTERPLAY ENTERTAINMENT CORP.

By: _____
Name: Herve Caen
Title: Chief Executive Officer

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division (Greenbelt)

| | |
|---|---|
| BETHESDA SOFTWORKS LLC,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>INTERPLAY ENTERTAINMENT CORP.,<br><br>Defendant/Counter-Plaintiff. | Civil No. 09 CV 2357 (DKC) |

## JOINT MOTION TO DISMISS WITH PREJUDICE

Plaintiff Bethesda Softworks LLC ("Bethesda") and Defendant Interplay Entertainment Corp. ("Interplay"), by and through their undersigned counsel, respectfully request, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, that the Court enter an order dismissing the above-captioned litigation, including all claims asserted by Bethesda and all counter-claims asserted by Interplay, subject to the terms and conditions set forth in the attached Settlement Agreement (the "Agreement") (*see* Exhibit 1), and in the form of the [Proposed] Order of Dismissal, which is filed concurrently herewith.

WHEREFORE, Bethesda and Interplay respectfully request the Court grant this Joint Motion to Dismiss With Prejudice and enter the proposed Order of Dismissal concurrently filed herewith.

Dated: January ___, 2012

Respectfully Submitted,

**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**

By:   /s/ Howard H. Stahl
      Howard H. Stahl, Bar # 24741
      Joseph J. LoBue, Bar # 17393
      801 17th Street, NW
      Washington, DC 20006
      Telephone:   202-639-7000
      Facsimile:   202-639-7003
      Email: howard.stahl@friedfrank.com
             joseph.lobue@friedfrank.com

*Counsel for Plaintiff/Counter-Defendant, Bethesda Softworks LLC*

**GERSH | DERBY, Attorneys at Law**

By:   /s/Jeffrey F. Gersh
      Jeffrey F. Gersh
      15821 Ventura Boulevard, Suite 515
      Encino, California 91436
      Telephone:   818-536-5700
      Facsimile:   818-981-4618
      Email: jgersh@gershderbylaw.com

*Counsel for Defendant/Counter-Claimant, Interplay Entertainment Corp.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division (Greenbelt)

| | |
|---|---|
| BETHESDA SOFTWORKS LLC,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>INTERPLAY ENTERTAINMENT CORP.,<br><br>Defendant/Counter-Plaintiff. | Civil No. 09 CV 2357 (DKC) |

### [Proposed] ORDER OF DISMISSAL

Plaintiff Bethesda Softworks LLC ("Bethesda") and Defendant Interplay Entertainment Corp. ("Interplay") have agreed to settle their claims and counter-claims against each other, and to dismiss the above-captioned litigation with prejudice, subject to the terms and conditions set forth in this Order and the incorporated Settlement Agreement. The Parties agree to and shall be bound by the requirements of this Order and the incorporated Settlement Agreement.

Therefore, it is by the United States District Court for the District of Maryland on this _____ day of _____, 2012, hereby

**ORDERED** that the Joint Motion to Dismiss With Prejudice is **GRANTED**; and it is further

**ORDERED** that all of the terms of the Settlement Agreement between the Parties, attached as Exhibit 1 to the Joint Motion to Dismiss With Prejudice are incorporated into this Order; and it is further

**ORDERED** that this Court retains jurisdiction over the Parties and subject matter of this action to construe and enforce this Order and the incorporated Settlement Agreement.

_____
HON. DEBORAH CHASANOW
U.S. DISTRICT COURT FOR THE
DISTRICT OF MARYLAND